**Ronald G. MEEKS, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 91–1396.**

United States Court of Veterans Appeals.

July 15, 1993.

John V. Hogan was on the brief, for appellant.

James A. Endicott, Jr., Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Sara B. Lake, were on the pleadings, for appellee.

Before KRAMER, MANKIN and IVERS, Judges.

MANKIN, Judge:

Ronald G. Meeks appeals the April 22, 1991, Board of Veterans' Appeals (BVA or Board) decision which denied entitlement to an increased (compensable) evaluation for choroidal gyrate atrophy with restricted visual fields from December 10, 1969, through January 15, 1985. The Secretary of Veterans Affairs (Secretary) filed a motion for remand for the BVA to identify the category of appellant's 1985 claim pursuant to 38 C.F.R. § 3.160 (1992), to provide reasons or bases for its decision, and to address appellant's private medical examinations, pertinent regulations on rating criteria, and conclusions reached by the Director of the Compensation and Pension Service. Appellant opposes this motion. The Court has jurisdiction pursuant to 38 U.S.C.A. § 7252(a) (West 1991). We remand for proceedings consistent with this opinion.

## I. Factual Background

Mr. Meeks served on active duty from April 1966 to December 1969. His enlistment examination reflects uncorrected right and left eye vision of 20/25, and corrected vision of 20/20. A prescription for glasses, filled on February 19, 1968, indicates that appellant was extremely sensitive to light. His separation examination reveals trouble with night vision.

On November 11, 1970, appellant filed an application for compensation or pension requesting service connection for an eye disorder which began in April 1967. He submitted a November 1970 statement from Dr. Newton, who diagnosed appellant with "Tapedo Retinal Degeneration, Probably Retinitis Pigmentosa." (Retinitis pigmentosa is a disease marked by progressive loss of retinal response, retinal atrophy, attenuation of retinal vessels, and clumping of pigment, with contraction of field of vision. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1456 (27th ed. 1988).) The Veterans' Administration (now Department of Veterans Affairs) (VA) Regional Office (RO) requested Mr. Meeks' service medical records, but procured only his enlistment and separation examinations. On December 18, 1970, the RO issued a rating decision denying service connection, noting that the decision was based upon incomplete records. The letter informing appellant of the decision stated:

Your eye condition is constitutional or developmental in nature and is not a

disability under the law for which compensation is payable. All of your military service records have not been received. *When they are received, further consideration will be given to your claim and you will be notified.* (Emphasis added.) Apparently no further action was taken by the RO.

In January 1985, appellant requested that his claim be reopened. He submitted letters written by his mother and sister, stating that appellant had no eye problems prior to service. On May 3, 1985, the RO denied service connection. The decision indicated that evidence submitted from Dr. Newton showed that his earlier diagnosis of probable retinitis pigmentosa was in error and the corrected diagnosis was choroidal gyrate atrophy (a progressive degeneration of the choroid and pigment epithelium of the retina that is inherited as an autosomal recessive trait and is characterized by myopia, constriction of the visual field, night blindness, and cataracts. *See* WEBSTER'S MEDICAL DESK DICTIONARY 278 (1986)). The rating decision noted that complete service medical records were not available.

Appellant filed a Notice of Disagreement (NOD) to this decision, and a VA Form 1–9 (Substantive Appeal), and submitted a substantial amount of medical evidence. The record includes a December 1985 letter from Dr. Newton, who stated that he had examined appellant in 1985 and found him to have the same condition in each eye as he had upon examination in 1970, with no noticeable progression. He found that although he had originally diagnosed appellant with retinitis pigmentosa, the correct diagnosis was choroidal gyrate atrophy. He further noted that he had reviewed Mr. Meeks' discharge physical report that indicated problems with night vision, and opined that that problem was symptomatic of the current disorder. Dr. Newton concluded, "The existing condition that I find, and first diagnosed in 1970, was undoubtably present at the time of the discharge physical 1969."

The record also contains medical records from Dr. Schermerhorn, dated 1974 to 1978, including reports from several vision tests. Dr. Schermerhorn had initially found appellant to have retinitis pigmentosa, but changed this diagnosis to choroidal gyrate atrophy in November 1974. A letter written by Dr. Schermerhorn in October 1974 states that appellant had less than five degrees of visual field.

On November 5, 1986, appellant underwent an examination at the VA Medical Center and was diagnosed with "choroidal gyrate atrophy as [diagnosed] in 1976." The RO denied service connection for defective vision on January 26, 1987. Appellant submitted a March 1987 letter from Dr. Schermerhorn, who stated that appellant's visual fields are "approximately 5 degrees in the left and possibly 8 degrees in the right eye as determined by earlier electroretinography in 1974."

On August 15, 1988, the BVA awarded service connection for choroidal gyrate atrophy, finding that the disorder had preexisted service and was aggravated by service. The RO requested an advisory opinion from the Director of the VA Compensation and Pension Service (Director) as to the appropriate evaluation, and effective date of service connection. On November 10, 1988, the RO awarded a 70% evaluation to be maintained pending a reply from the Director. On March 30, 1989, the Director determined that service connection should be granted from the date of appellant's 1970 claim because the December 18, 1970 rating decision was not final. The Director also advised that a noncompensable rating should be granted as of 1970, stating that

[a] compensable evaluation cannot be given prior to January 16, 1985, date of reopened claim, unless there are examinations prior to that date which meet the requirements of 38 C.F.R. [§] 3.326(c).

The Director recommended that the RO schedule a new examination, and one was provided to appellant. On August 25, 1989, the RO granted a 100% rating for choroidal gyrate atrophy with restricted visual fields to less than five degrees bilaterally, under 38 C.F.R. § 4.84a, Diagnostic Code 6080 (1992), effective from January 16, 1985, and 0% from December 10, 1969, the day after the date of discharge.

Mr. Meeks filed an NOD with the RO decision, and claimed that the effective date of the 100% rating should be the date of his original claim in 1970. He submitted an affidavit from Dr. Schermerhorn, who stated, "It is my professional opinion that Mr. Meeks has had less than five degrees of visual field bilaterally in each eye since I first saw him in 1974." Additionally, Dr. Newton wrote the VA and stated,

> There is no question that Mr. Meeks had constriction of the visual field at the time of his original examination in 1970 and it follows that it is reasonable to assume that his visual field was in the 5 [degree] area of constriction at this time, because he has no documented progression of this condition since his original diagnosis.

On April 22, 1991, the BVA denied an earlier effective date for the 100% rating. The Board found that

> private clinical records cannot provide a basis for assigning a compensable rating for any disorder prior to the date they are received by the VA. The clinical evidence contained in the claims folder prior to January 16, 1985, did not show any impairment of visual acuity or any contraction of the visual fields.

*Ronney G. Meeks*, BVA ____, at 5 (Apr. 22, 1991). A timely appeal to this Court followed.

## II.  Analysis

### A.  Disposition of 1970 Claim

■ Mr. Meeks contends that he initiated his claim for service connection in 1970 and that claim is still pending. We agree. The letter informing appellant of the December 1970 RO decision stated that further consideration would be given to his claim upon the receipt of additional service medical records and that he would be notified at that time. The Board, in its 1988 decision, found that because no such action was undertaken after issuance of this letter, "the veteran's current claim for service connection for an eye disorder will be considered without regard to the finality of the December 1970 rating decision." In his advisory opinion, the Director construed the BVA's statement to mean that the De-

cember 1970 rating decision did not become final, and found it "only fair and equitable to grant service connection from the date of original claim." The 1991 BVA decision referenced the 1988 Board decision, and considered appellant's claim to be in an open status since the day following discharge from service. Furthermore, appellant's 1970 claim fits into the definition of a pending claim, pursuant to 38 C.F.R. § 3.160(c) (1992), as an application which has not been finally adjudicated. Based upon the above findings of the Board and Director, and applicable regulation, we hold that the 1970 rating decision was not a final decision and remains pending.

### B.  Effective Date of a Compensable Rating

The effective date of an award based on an original claim shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor. 38 U.S.C.A. § 5110(a) (West 1991). The effective date of an award of disability compensation shall be the day following the date of discharge or release if application is received within one year of such date of discharge or release. 38 U.S.C.A. § 5110(b)(1) (West 1991); *see* 38 C.F.R. § 3.400(b)(2) (1992). Mr. Meeks filed an application for compensation or pension for an eye condition within one year of the date of service discharge. He submitted several medical statements reflecting treatment for an eye disability as early as 1970. Dr. Schermerhorn stated that since 1974 appellant had had less than five degrees of visual field. Dr. Newton opined, "There is no question that Mr. Meeks had constriction of the visual field at the time of his original examination in 1970 and it follows that it is reasonable to assume that his visual field was in the 5 [degree] area of constriction at this time, because he has no documented progression of this condition since his original diagnosis."

■ In its denial of an earlier effective date, the Board states, "Private clinical records cannot provide a basis for assigning a compensable rating for any disorder prior

to thc date they are received by the VA." *Meeks*, BVA ——, at 5. The BVA did not supply any supporting citation for this statement. It is well established that the BVA must provide the reasons or bases for its findings and conclusions on all material issues of fact and law. 38 U.S.C.A. § 7104(d)(1) (West 1991); *see Gilbert v. Derwinski*, 1 Vet.App. 49, 56–57 (1990). Where, as here, the Board fails to fulfill this obligation, the Court is precluded from effectively reviewing the adjudication, and the veteran is unable to understand the Board's rationale for denying his claim. *See Gilbert*, 1 Vet.App. at 57. Upon remand the Board shall provide reasons or bases for the above stated conclusion, specifically determining whether 38 U.S.C.A. § 5110(a) and (b)(1), and 38 C.F.R. § 3.400(b)(2) require a compensable rating as of the day following the date of discharge, and if so, the percentage of disability to be so awarded and the effect of 38 C.F.R. §§ 4.75, 4.76, and 4.76a (1992), if any, on such determination.

### III. Conclusion

Because the BVA decision does not contain an adequate statement of reasons or bases or a discussion of pertinent statutes and regulations, the Court is presented with an inadequate record to review. Consequently, the Secretary's motion is GRANTED, the BVA decision is VACATED, and the matter is REMANDED to the Board for proceedings in accordance with this opinion.