**Charles L. DEGMETICH,**
**Claimant–Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Respondent–Appellee.**

No. 96–7009.

United States Court of Appeals, Federal Circuit.

Jan. 16, 1997.

Stephen L. Purcell, Disabled American Veterans, Washington, DC, argued, for the claimant-appellant. Of counsel was Ronald L. Smith.

Thomas O. Mason, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, argued, for the respondent-appellee. On the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Joseph A. Kijewski, Assistant Director. Also on the brief were Donald E. Zeglin, Deputy Assistant, Office of General Counsel, and David J. Barrans, Staff Attorney, Department of Veterans Affairs, Washington, DC.

Before MICHEL, Circuit Judge, COWEN, Senior Circuit Judge, and CLEVENGER, Circuit Judge.

MICHEL, Circuit Judge.

Charles L. Degmetich appeals the September 25, 1995 decision of the Court of Veterans Appeals in 94–444, *Degmetich v. Brown,* 8 Vet.App. 208 (1995), which affirmed an April 6, 1994 decision of the Board of Veterans' Appeals ("Board"). The Board previously had reopened Mr. Degmetich's case and remanded it to the regional office of the Department of Veterans Affairs (formerly the Veterans Administration) ("VA"), in part to determine if the October 1967 decision ("1967 Decision") of the regional office, which denied Mr. Degmetich compensation, contained "clear and unmistakable error." The Board, on appeal after the remand, affirmed the regional office's determination of no clear and unmistakable error in the 1967 Decision.

The appeal was submitted for our decision following oral argument on October 8, 1996. Because we hold, under the principles of deference espoused in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), that the Secretary of Veterans Affairs ("Secretary") permissibly interpreted 38 U.S.C. § 1131 (1994)[1] to require a presently existing disability at the time the claim is filed in order for a veteran to be entitled to compensation under that statute, we affirm the Court of Veterans Appeals' decision.

## BACKGROUND

No relevant facts are disputed.[2] Mr. Degmetich is a veteran who served two periods of active duty in the Air Force and National Guard between July 15, 1956 and April 4, 1960. Between January and March 1961, within a year of his discharge, Mr. Degmetich received inpatient treatment for psychiatric problems at a state hospital in California. On February 1, 1961, doctors diagnosed him with "schizo[phrenic] reaction, acute undifferentiated." That month, Mr. Degmetich filed a claim with the VA seeking disability compensation for "nerves" suffered within one year of his service.

In April 1961, a VA regional office deferred its decision on that claim pending receipt of Mr. Degmetich's service records and an examination of his condition. However, the VA was unable to locate Mr. Degmetich and took no further action on his claim. On April 21, 1967, Degmetich was admitted to another California hospital. He was diagnosed there with "depressive reac[tion and] probable psychosis." He was then transferred to the VA hospital in Palo Alto, California, in May 1967, where his diagnosis was, in part, as follows: "Personality trait disturbance.... Question of schizophrenic reaction, schizo-affective type, must be entertained though at present time patient does not seem to be sufficiently thought disordered to justify this diagnosis."

At the VA hospital, Mr. Degmetich again filed for benefits for his condition. The VA regional office denied the claim in 1967, concluding that his personality trait disorder diagnosed in 1967 was not a disability under the law. In addition, the regional office determined his 1961 diagnosis of acute schizophrenic reaction was insufficient since "the chronic disease is required for service connection." Mr. Degmetich did not appeal the 1967 Decision but later attempted several times to reopen his claim; he was successful in June 1990 when the Board (following an

1. The Court of Veterans Appeals in its decision (and Mr. Degmetich in his brief) assumed the applicable statute was 38 U.S.C. § 1110 (1994) (formerly 38 U.S.C. § 310). Section 1110 covers injury or disease incurred in the line of duty "during a period of war." As the Secretary notes, Mr. Degmetich's claim, since his disability was not manifest during a period of war, should have been analyzed under 38 U.S.C. § 1131 (1994) (formerly 38 U.S.C. § 331). Section 1131 is identical in all respects to section 1110 but covers injury or disease incurred in "other than a period of war." However, as the statutes are otherwise the same, this error is harmless. The Secretary further concedes in his brief that "a remand to the lower court to apply the correct standard is not necessary" to correct this mistake, which appears to be in the nature of a drafting error as the Board cited to both section 1110 and 1131. All further references herein will be to section 1131.

Also, the Secretary argues that had Mr. Degmetich's claim been adjudicated at the time he initially filed his claim in 1961, Mr. Degmetich would not have been able to take advantage of the presumption afforded veterans injured in war

that "diseases becoming manifest to a degree of 10 percent or more within a year from the date of separation from ... service ... shall be considered to have been incurred in or aggravated by such service." *See* 38 U.S.C. § 1112(a)(1) (1994) (formerly 38 U.S.C. § 312). Section 1112(a)(1) was made applicable to certain veterans injured other than in a period of war in March of 1966, Pub.L. No. 89–358, § 7(a), 80 Stat. 12, 27 (1966) (codified at 38 U.S.C. § 337) (now, 38 U.S.C. § 1137 (1994)). Since Mr. Degmetich's disability did not arise until after discharge and was not during a period of war, *see infra*, if the presumption in section 1112(a)(1) does not apply, his claim fails. However, because we hold Mr. Degmetich's claim fails even if the presumption applies, the issue is not dispositive. We will therefore presume, without deciding, the issue, that Mr. Degmetich is entitled to application of section 1131 with the presumption of section 1112(a)(1) through section 1137 to his claim.

2. The full procedural and factual history of the case is detailed in the Court of Veterans Appeals' decision, *Degmetich v. Brown*, 8 Vet.App. 208, 208–10 (1995).

appeal from a denial of a request to reopen in the regional office) reopened and remanded his claim. The Board ultimately affirmed the regional office's finding that there was no clear and unmistakable error in the 1967 Decision. Mr. Degmetich then appealed to the Court of Veterans Appeals, which concluded that the Board had erred because under 38 C.F.R. § 3.309(a) (1995) schizophrenia, even if diagnosed "acute," will be accepted as chronic. It held that error harmless, however, and affirmed the Board based on the conclusion that "there must have been evidence both of a service connected disease or injury and a disability in 1967 which was attributable to such disease or injury" under section 1131. Since there was no evidence that Mr. Degmetich suffered from psychosis at the time he applied for benefits in 1967, the Court of Veterans Appeals held that he was not entitled to benefits. Mr. Degmetich then timely filed this appeal.

## DISCUSSION

■ 38 U.S.C. § 1131 (1994) provides for compensation to veterans for "service connected" disease or injury. It states, in relevant part:

> For disability resulting from personal injury suffered or disease contracted in line of duty ... in the active military, naval, or air service, during other than a period of war, the United States will pay to any veteran thus disabled ... compensation as provided in this subchapter....

*Id.* Wartime veterans and veterans who served after 1946 who incur a chronic disease that manifests to a degree of ten percent or more within one year of discharge are presumed by statute to have incurred the disease during service (thus, presumed "service

connected"). *See* 38 U.S.C. § 1112(a) (1994);[3] 38 U.S.C § 1137 (1994).[4]

Mr. Degmetich argues that the Court of Veterans Appeals erred when it upheld the denial of compensation to him based on the fact that there was no evidence he was suffering from a cognizable condition (*i.e.*, a psychotic disorder—undifferentiated schizophrenia, *see* 38 C.F.R. § 4.132 (1995) (diagnostic code 9204)) at the time of his 1967 application for compensation. He argues the meaning of section 1131 is plain and requires compensation for a claimant who demonstrates a "chronic" disease manifest to a degree of ten percent or more within one year of separation from service regardless of his or her condition at the time of filing.[5] Since the statute does not say "present disability" but merely "disability," he argues all that is necessary is that the disability be incurred in service or within one year of separation from service. On Mr. Degmetich's reading of the statute, the point at which the claim is filed or adjudicated is irrelevant. As further support, Mr. Degmetich argues that the Court of Veterans Appeals cases that hold that a presently existing disability is required, *Caluza v. Brown*, 7 Vet.App. 498, 505 (1995), *Brammer v. Derwinski*, 3 Vet.App. 223, 225 (1992), and *Rabideau v. Derwinski*, 2 Vet.App. 141, 143 (1992), are incorrect because they conflate the issue of the degree of disability, as rated by the Secretary's schedule of ratings, *see* 38 C.F.R. part 4 (1995), with the issue of entitlement to disability, *see* 38 C.F.R. § 3.303 (1995).

The Secretary also maintains that the statute is clear on its face, arguing instead that the statute plainly requires a present disability. The Secretary asserts that the language

---

**3.** 38 U.S.C. § 1112(a) (1994) reads:

For the purposes of section 1110 of this title ... in the case of any veteran who served for ninety days or more during a period of war—

(1) a chronic disease becoming manifest to a degree of 10 percent or more within one year from the date of separation from such service;

....

shall be considered to have been incurred in or aggravated by such service, notwithstanding there is no record of evidence of such disease during the period of service.

**4.** 38 U.S.C. § 1137 (1994) reads:

[T]he provisions of sections 1111, 1112, and 1113 of this chapter shall be applicable in the case of any veteran who served in the active military, naval, or air service after December 31, 1946.

**5.** The parties do not dispute that because Mr. Degmetich was hospitalized for more than 21 days in 1961, he would be assigned a 100 percent disability rating for the time he was in the hospital. *See* 38 C.F.R. § 4.29 (1995).

"for disability resulting" and "thus disabled" indicates that section 1131 requires not only that Mr. Degmetich had suffered from schizophrenia within one year of his discharge, but also at the time of his application for benefits. He further argues that this plain meaning is supported by the "consistent ,and longstanding administrative interpretation" of the statute upheld in cases like *Rabideau*. The Secretary also contends that the other statutes support his administrative interpretation. For instance, he argues that the statutes governing payment of benefits, 38 U.S.C. § 5110(a) (1994)[6] and 38 U.S.C. § 5111(a) (1994)[7], together provide that awards of compensation cannot be made until after an application has been filed by the veteran. *See Brammer*, 3 Vet.App. at 225. He also argues that the statutes governing provision of medical benefits, 38 U.S.C. §§ 1710, 1712 (1994), to veterans with service connected injuries also require a presently existing disability.

While acknowledging Mr. Degmetich's argument that certain disabilities are entitled to a "zero percent" rating under the Secretary's rating system, *see, e.g.*, 38 C.F.R. § 4.73 (1995) (slight muscle injury rated at 0%), the Secretary argues that "the VA's practice of assigning zero-percent ratings is consistent with the general requirement that service connection may be granted only in cases of a currently existing disability." Because 38 U.S.C. § 1112(a) only provides an "evidentiary presumption" that the disability is service connected, the Secretary concludes that section 1112(a) does not itself create a substantive right outside of sections 1110 and 1131 which require a presently existing condition.

We review interpretations of statutes by the Court of Veterans Appeals de novo, *see* 38 U.S.C. § 7292(a), (c) (1994); *Strott v. Derwinski*, 964 F.2d 1124, 1126 (Fed.Cir. 1992), applying the two-step test articulated in *Chevron*, 467 U.S. at 842–43, 866, 104 S.Ct. at 2781–82, 2793. *See Smith v. Brown*, 35 F.3d 1516, 1517 (Fed.Cir.1994) ("[O]ur review of Veterans' Court judgments entails the review of underlying agency action").[8]

We disagree with both sides' contentions that the meaning of section 1131 is plain and unambiguous on its face. The statute speaks only of "disability resulting" from injury or disease and payment of compensation to a veteran "thus disabled." While the statute does not say "presently existing" or "current" disability, the Secretary argues that Mr. Degmetich was not in fact "disabled" at the time he filed his claim and thus does not fall within the statute. While it is clear that allegations of a future disability are not sufficient for an award of compensation, the statute does not clearly and on its face say whether past disabilities are to be awarded compensation. Thus, all that one can fairly say about the statute is that it is silent on the matter of when the disabled veteran must be disabled. *Cf. Chevron*, 467 U.S. at 841, 104 S.Ct. at 2781 (Clean Air Act silent as to what constitutes "stationary source"). The legislative history is similarly silent. *See, e.g.*, H.R.Rep. No. 85–1298 (1958); S.Rep. No. 85–332 (1957); H.R.Rep. No. 85–279 (1957); Robert T. Kimbrough and Judson B. Glen, American Law of Veterans § 12 (2d. ed. 1954); *see also* 38 U.S.C. § 701(a) (1952) (pension paid to "[a]ny person who served ... and who is disabled as a result of disease

---

**6.** 38 U.S.C. § 5110(a) (formerly 38 U.S.C. § 3010) states:

> [T]he effective date of an award based on an original claim, a claim reopened after final adjudication ... shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor.

**7.** 38 U.S.C. § 5111(a) (formerly 38 U.S.C. § 3012) provides:

> [P]ayment of monetary benefits based on an award ... of compensation ... may not be made to an individual for any period before the first day of the calendar month following the

month in which the award ... became effective as provided under section 5110 of this title....

**8.** It is beyond question that the Secretary has substantive rulemaking power with respect to the benefits in question here, and thus *Chevron* deference applies. *Cf. Merck & Co., Inc. v. Kessler*, 80 F.3d 1543, 1549, 38 USPQ2d 1347, 1351 (Fed. Cir.1996), *citing Atchison, Topeka and Santa Fe Ry. Co. v. Pena*, 44 F.3d 437, 441 (7th Cir.1994) (en banc) (no *Chevron* deference to Patent and Trademark Office ("PTO") because PTO Commissioner did not have rulemaking authority in relevant area).

or injury ... incurred in the line of duty in such service").

If Congress has "not directly spoken to the precise question at issue," Congress has implicitly delegated the issue to the agency and "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 842–43, 104 S.Ct. at 2781–82. The question remaining to be decided, then, is whether the requirement of a presently existing disability is a rational and permissible way to fill the "gap" in the interpretation of the statute. *See id.* at 842–43, 866, 104 S.Ct. at 2781–82, 2793.

The parties agree that when interpreting statutes, the court is required to look at the context and provisions of the law as a whole. *See United States Nat'l Bank of Oregon v. Independent Ins. Agents of Am., Inc.*, 508 U.S. 439, 454, 113 S.Ct. 2173, 2182, 124 L.Ed.2d 402 (1993); *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221, 112 S.Ct. 570, 574, 116 L.Ed.2d 578 (1991). When viewed in the context of the other statutes involving the payment of veterans' benefits, the Secretary's interpretation of the statute is supportable. The statutes governing payment of benefits for disability, cited *supra*, only allow payment for disability existing on and after the date of application. Those statutes, which control the effective date of payment (admittedly a slightly different problem) provide strong evidence of congressional intent to restrict compensation to only presently existing conditions. If Congress had been concerned with awarding compensation to any applicant who had a disability, presently existing or not, then it would not have so restricted the effective date of payments to the period of time after an application has been filed.[9]

Similarly, the statutes governing the other benefits besides compensation afforded disabled veterans—like hospital care and outpatient care for other disabilities not "service connected"—are limited to those veterans who "ha[ve] a service-connected disability." *See* 38 U.S.C. § 1710(a)(1)(E) (1994) (hospital and nursing care); 38 U.S.C. § 1712(a)(1)(b), (a)(2)(A) (outpatient medical services). Again, while these statutes do not dictate a single meaning for the statutory language of section 1131, they provide a strong indication that the Secretary's interpretation is a reasonable one.

Given the structure of the law as a whole, the Secretary's interpretation cannot be considered arbitrary. We must therefore accept the Secretary's interpretation since it is not "arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 844, 104 S.Ct. at 2782–83. The requirement of a currently existing condition is not contrary to the statute, and in fact comports with the other provisions of the statute as a whole.

Mr. Degemetich also argues that the requirement of a presently existing disability as of the time a claim is filed will "virtually estop[ ]" him from ever recovering on a claim for disability compensation even if based on new evidence of psychosis and disability, and thus such a reading of the statute is irrational. Mr. Degmetich argues that a future diagnosis of the psychosis and disability will not be "new and material" evidence so as to entitle him to reopen his claim under 38 U.S.C. § 5108 (1994), since all of the information regarding the existence of his psychosis within a year following service is already "of record." The Secretary responds that Mr. Degmetich's argument is without merit, reasoning, "Mr. Degmetich may be able to reopen his claim by submitting evidence of current manifestations of a psychosis. *See*

---

**9.** We note Mr. Degmetich's citation to 38 C.F.R. § 3.400 (1995), issued pursuant to 38 U.S.C. § 5110(a). Section 3.400 provides that for claims received prior to October 1, 1984, if the claim is filed within one year from the date of permanent or total disability, the effective date shall be the date of receipt of claim or the date on which the veteran became totally disabled. While this narrow exception in the regulations tends to support Mr. Degmetich's interpretation and be contrary to the Secretary's proffered in-

terpretation, the relevant question when looking at the surrounding statutes and regulations is whether the Secretary's interpretation of the statute, when read as a whole, is rational. This is especially so given the agency's particularized understanding of the statutes and governing policy. *See Chevron*, 467 U.S. at 844, 104 S.Ct. at 2782–83. Since the general implication of the statute governing payment is to prevent payment for periods before the date of application, the Secretary's interpretation is supported.

38 C.F.R. [§ ] 3.303(b)." Although we do not here decide any future issue whether Mr. Degmetich's claim can be reopened on the basis of any future diagnosis, we find unconvincing Mr. Degemetich's assertion that no veteran initially denied service-connection due to the lack of presently existing disability will ever be able to later reopen a claim based on "new and material" evidence of a presently existing disability. Mr. Degmetich gives no credible legal explanation for his prediction, nor does the Secretary for his own, contrary assertion. We can, however, imagine a circumstance in which the second diagnosis could change the service-connection conclusion: namely, a new diagnosis of present psychosis which states that it is merely an aggravation of the mental condition as originally diagnosed. Thus we cannot agree that, as interpreted by the Secretary, the statute is irrational.

We therefore uphold the Court of Veterans Appeals' decision upholding the Secretary's interpretation of section 1131 to require a presently existing disability, and affirm its decision.

*AFFIRMED.*