**Ronald G. MEEKS, Appellant,**

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.**

**No. 97–791.**

United States Court of Appeals for Veterans Claims.

Sept. 24, 1999.

Before NEBEKER, Chief Judge, and KRAMER, FARLEY, HOLDAWAY, IVERS, STEINBERG, and GREENE, Judges.

## ORDER

PER CURIAM:

On June 29, 1999, the appellant filed a notice of appeal to the United States Court of Appeals for the Federal Circuit. On June 30, 1999, this Court purported to issue an order denying en banc review of the three-judge panel opinion affirming the decision of the Board of Veterans' Appeals. Noting that this Court lacked jurisdiction to issue its June 30, 1999, order, it is

ORDERED that the June 30, 1999, order denying en banc review is REVOKED and withdrawn from publication in the Veterans Appeals Reporter.

NEBEKER, Chief Judge, concurring:

Our dissenting colleagues have lost sight of the fact that the order denying the single judge's request for en banc review was entered by mistake and was void. A Court always has jurisdiction to clarify that a purported action through clerical mistake is just that and nothing more. To do so is not a reassertion of subject matter jurisdiction. Indeed, had it not been for the delay caused by the preparation of the latest dissent, the order revoking the purported denial of en banc review could have been issued before the appeal to the Federal Circuit was docketed. *Cf.* FED. R.CIV.P. 60(a)

STEINBERG and KRAMER, Judges, dissenting:

The chronology of this matter is as follows: The panel opinion was issued on May 3, 1999. *Meeks v. West,* 12 Vet.App. 352 (1999). On June 21, 1999, we submitted for filing, with a copy to all judges, a joint statement dissenting to a vote by a majority of the Court to deny a sua sponte

request for en banc review in this case.[1] The appellant filed with this Court on June 29, 1999, a Notice of Appeal (NOA) to the U.S. Court of Appeals for the Federal Circuit (Federal Circuit). On June 30, 1999, this Court, unaware of the June 29, 1999, NOA, issued and published a precedential en banc order denying the sua sponte request for en banc review. That order included our joint dissent to the en-banc-review denial. On or about that same day, according to the office of the Clerk of the Court, this Court electronically transmitted a copy of the June 30 order to the West Group (West) for publication as a precedential order of the Court. Thereafter, it appears that it was placed in the Westlaw electronic database but has apparently inexplicably vanished from that electronic database and, according to West, is not pending for publication in the Veterans Appeals Reporter.[2]

Today, the Court purports to have jurisdiction to issue an order revoking a prior order in a case over which the Court maintains that it lost jurisdiction by virtue of the appellant's June 29, 1999, filing of an appeal to the Federal Circuit. If the Court did not have jurisdiction over this case at the time of its June 30, 1999, order, it surely does not have any such jurisdiction now, almost three months later, while the case remains pending on appeal at the

Federal Circuit.[3] Hence, we dissent from the assumption of jurisdiction made by the instant order, which is premised on the assertion by the Court that it now must take action on a matter over which it acknowledges that it has lost jurisdiction.[4]

Moreover, the Court's order is moot as to the matter of withdrawing the June 30 order from publication in the Veterans Appeals Reporter published by West, because, as noted above, that published precedential order has never appeared in the Veterans Appeals Reporter, is not pending there for such publication, and is not available on Westlaw. Hence, there is nothing to withdraw in that regard; it has seemingly already been withdrawn.

Finally, because the Court has today, as noted, reasserted jurisdiction over this appeal and in order that the record may be preserved as to our views regarding the *Meeks* opinion's failure to present a reasoned analysis on a matter of exceptional importance, the text of our joint dissenting statement issued on June 30, 1999, is set forth below:

OUR JUNE 30, 1999, DISSENTING STATEMENT

STEINBERG and KRAMER, Judges, dissenting:

A decision by the full Court was requested, and we voted for such en banc

---

1. *See* Internal Operating Procedures (IOP) at V.(a)(3), 10 Vet.App. CDXXVI ("If en banc consideration or review is requested by a judge, [the Court's Central Legal Staff] circulates a vote sheet to all judges with a memorandum from the requesting judge detailing the rationale for en banc consideration or review. If a majority of the judges vote to deny the request, no order is issued unless it is requested by a judge"); IOP at VI.(b), 10 Vet.App. at CDXXVII ("Designation of an action of the Court for publication is made by any judge who participated (as a single judge, a panel member, or a nonsitting judge who called for en banc consideration) in that action").

2. The most recent edition of the advance sheets for the Veterans Appeals Reporter (August 1999) includes Court actions issued as recently as August 11, 1999, and opinions

issued on July 27, 1999. *See, e.g., Felix v. West,* 12 Vet.App. 500 (1999) (per curiam order); *Anderson v. West,* 12 Vet.App. 491 (1999).

3. The filing of a Notice of Appeal with the U.S. Court of Appeals for the Federal Circuit deprives this Court of jurisdiction over the underlying case. *See In re R. Greg Bailey,* 11 Vet.App. 348, 349 (1998) (per curiam order) (and cases cited therein), *aff'd in part and dismissed in part,* 182 F.3d 860 (Fed.Cir. 1999).

4. Nor is this an exercise of the Court's jurisdiction to act now, sua sponte, to determine its own jurisdiction. *See Marsh v. West,* 11 Vet.App. 468, 469 (1998) (and cases cited therein). We *do* have such jurisdiction over that question, and the answer is quite clear cut: "If not then, not now."

review of the panel opinion in this case, *Meeks v. West,* 12 Vet.App. 352 (1999) (*Meeks II* ), because the issue involved is a matter of first impression and we believe that that factor and the panel opinion's failure to set forth a reasoned analysis in support of its holding make this a matter of "exceptional importance".[5] It is this failure to present a reasoned analysis of the pertinent issues that impels this dissent.

## I. Discussion
### A. Relevant Background

The facts of this case, as set out in the Court's opinions in *Meeks v. Brown,* 5 Vet.App. 284, 285–286 (1993) (*Meeks I* ), and *Meeks II,* 12 Vet.App. at 353–54, are as follows. The veteran first filed, in November 1970, within one year after his December 1969 discharge from service, a claim for Department of Veterans Affairs (VA) disability compensation for an eye disorder. *Meeks I,* 5 Vet.App. at 285. In August 1988, the Board awarded service connection based on that November 1970 claim, and in November 1988 a VA regional office (RO) assigned to the veteran an apparently provisional 70% rating, effective March 1985—the first rating assigned

following the November 1970 claim—for impaired vision under 38 C.F.R. § 4.84a, Diagnostic Code (DC) 6080 (1992); that rating was to be maintained pending a reply from VA's Director of the Compensation and Pension (C & P) Service, from whom the RO had requested an advisory opinion as to the appropriate evaluation for the veteran's service-connected eye condition. *Meeks I,* 5 Vet.App. at 286; *Meeks II,* 12 Vet.App. at 353. After the C & P Director replied, the RO, on his recommendation, scheduled a new C & P examination. Thereafter, in August 1989, the RO changed the veteran's rating to 100%, effective as of January 16, 1985, and to 0%, effective from the day after the date of his discharge from service (December 10, 1969)[6] up to the effective date of the 100% rating. *Ibid.*[7] In the Board of Veterans' Appeals (Board or BVA) decision before the Court in *Meeks I,* the Board denied the veteran's appeal for any change in those ratings. *Meeks I,* 5 Vet.App. at 287.

Thereafter, following a remand by this Court in 1993 as to the veteran's contention that the 100% rating should have been made effective on the day after his date of

---

5.  U.S. VET.APP R. 35(c); U.S. VET.APP. INTERNAL OPERATING PROCEDURE (IOP), V.(a)(3), (b), 10 Vet.App. CDXXI, CDXXVI–VII (June 2, 1997) ("review of a panel decision en banc ... will be ordered where it is necessary ... to resolve a question of exceptional importance"). In addition, we note that the selection of the panel for this case was not carried out in accordance with the Court's IOP IV.(d), which provides as follows: "[I]f a case has been remanded, a new appeal from the [Board of Veterans' Appeals (Board or BVA)] decision on remand is referred ... to the panel (if any) that considered the pre-remand appeal." 10 Vet.App. at CDXXVI. This case was first before a panel of this Court composed of Judges Kramer, Mankin, and Ivers in 1991, on appeal from an April 22, 1991, decision of the Board. *Meeks v. Brown,* 5 Vet. App. 284 (1993). On July 15, 1993, that panel issued an opinion vacating that BVA decision and remanding the matter to the Board for readjudication. Hence, under IOP IV.(d), when the case was again appealed to this Court following the March 25, 1997, BVA decision made pursuant to the Court's 1993

6.  *See Fenderson v. West,* 12 Vet.App. 119, 126 (1999) (noting, in case where veteran had not applied within one year after discharge and so there was no question of applying section 5110(b)(1), that "at the time of an initial rating 'separate ratings can be assigned for separate periods of time based on facts found', a practice known as 'staged' ratings" (citations omitted)).

7.  The first rating awarded in the instant case as to the veteran's service-connected vision impairment was either 70% or 100%. It appears that the 70% rating that the VARO awarded in November 1988 was provisional only and that the 100% rating awarded in August 1989 totally superseded that provisional rating, thereby making the 100% award, in effect, the first rating assigned on the basis of the November 1970 application for compensation.

discharge (DADD), the BVA remanded the case to the RO, which awarded ratings of 50% from the December 1969 DADD, 60% from June 1973, and 70% from December 1974 to January 1985. *Meeks II, supra.* In the March 1997 BVA decision before the panel in *Meeks II,* the Board sustained these ratings, explicitly denying a rating of 100% earlier than January 1985. *Id.* at 354.

### B. Applicable Law and Regulation

Sections 5110(a) and (b)(1) of title 38, U.S.Code, provide:

(a) Unless specifically provided otherwise in this chapter, the effective date of an award based on an original claim, a claim reopened after final adjudication, or a claim for increase, of compensation, dependency and indemnity compensation, or pension, shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor.

(b)(1) The effective date of an award of disability compensation to a veteran shall be the day following the date of the veteran's discharge or release if application therefor is received within one year from such date of discharge or release.

38 U.S.C. § 5110(a), (b)(1). The implementing regulation for section 5110(a) is at 38 C.F.R. § 3.400 (1998), which provides:

Except as otherwise provided, the effective date of an evaluation and award of pension, compensation or dependency and indemnity compensation based on an original claim, a claim reopened after final disallowance, or a claim for increase will be the date of receipt of the claim or the date entitlement arose, whichever is the later.

38 C.F.R. § 3.400. The implementing regulation for section 5110(b)(1) is at 38

C.F.R. § 3.400(b)(2)(i), which provides, in pertinent part:

(2) *Disability compensation*—(i) *Direct service compensation....* Day following separation from active service or date entitlement arose if claim is received within 1 year after separation from service; otherwise, date of receipt of claim, or date entitlement arose, whichever is later.

38 C.F.R. § 3.400(b)(2)(i).

### C. Lack of Reasoned Analysis

The Court's opinion holds that whereas 38 U.S.C. § 5110(b)(1) creates an exception to the general rule set forth in section 5110(a) that "the effective date of an award ... of compensation ... shall not be earlier than the date of receipt of application therefor", it does not also create, *in any respect,* an exception to the general rule in section 5110(a) that the effective date "shall be fixed in accordance with the facts found", 38 U.S.C. § 5110(a), (b)(1). *Meeks II,* 12 Vet.App. at 355. Specifically, the entire discussion by the Court (other than as to two matters on which the Court expresses "no view"), is as follows:

While subsection [sic] 5110(b)(1) allows for compensation back to the date of discharge if an application is filed within one year of discharge, it does not require that the 100% rating ultimately awarded must be retroactive if, on the record, that rating level does not accord "with the facts found." *See* 38 U.S.C. § 5110(a); *see also* [NORMAN J. SINGER,] SUTHERLAND [ON STATUTORY CONSTRUCTION] § 46.05 [ (5th ed.1992) ] (parts of statute must be read to harmonize).

*Meeks II, supra.* Such *ipse dixit* declarations give the impression of arbitrary and capricious decisionmaking of the type that appellate courts routinely invalidate on just such grounds when made by administrative agencies.[8] Not only does such a

---

8. *See Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 42–43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (agency decision "must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made" and must not "entirely fail[ ] to consider an important aspect of the problem"); *Illinois Pub. Tele-*

process provide little or no enlightenment to the parties, the bar, and the public, or encouragement as to this Court's adherence to the rule of law and prudential notions of judicial restraint, but it is also precisely the kind of decisionmaking that this Court criticizes virtually every day when it vacates BVA decisions for failure to comply with the mandate of 38 U.S.C. § 7104(d)(1) that those decisions must "include . . . a written statement" not only "of the Board's findings and conclusions" but also of the "reasons or bases for those findings and conclusions, on all material issues of . . . law presented on the record." 38 U.S.C. § 7104(d)(1). *See Gilbert v. Derwinski,* 1 Vet.App. 49, 57–58 (1990).

Against this backdrop, can there be any doubt that if a Board decision had come to the Court for review and contained such a conclusory declaration of statutory interpretation this Court would have vacated that decision and remanded the matter for an adequate statement of reasons or bases under section 7104(d)(1), and would have done so summarily by single-judge action as a matter that was "not reasonably debatable" under Court precedent? *Frankel v. Derwinski,* 1 Vet.App. 23, 25–26 (1990). Our frequent critiques of BVA decisional shortcomings would be rendered more credible were we to abide by our own pronouncement in *Gilbert:*

> [BVA] decisions must contain clear analysis and succinct but complete explanations. A bare conclusory statement, without both supporting analysis and explanation, is neither helpful to the veteran, nor "clear enough to permit effective judicial review", nor in compliance with statutory requirements.

*Gilbert,* 1 Vet.App. at 57. Apparently, however, what is sauce for the reviewee is not sauce for the reviewer.

Under the facts of this case set forth in part II.A., above, there are only three possible ratings that may be awarded here as of the DADD in December 1969: (1) 50%, which, following the Court's 1993 remand, the RO and Board determined was the actual rating applicable under "facts found" at the DADD; (2) 70%, the first rating—albeit an apparently provisional one—that the RO assigned to the veteran in this case; or (3) 100%, the first "nonprovisional" rating assigned by the RO. The Court, in *Meeks II,* affirms the Board's award of a 50% rating, using the "clearly erroneous" standard of review that applies to the Court's review of BVA factfinding, 38 U.S.C. § 7261(a)(4), notwithstanding that it is a novel interpretation *of the law* regarding establishing effective dates that is dispositive of the outcome in this matter. The panel opinion eschews exploration of many complex questions of interpretation raised by the applicable statutory and regulatory provisions.

Instead of analysis, the panel merely asserts that the statutory provisions at issue here have a "plain meaning". *Meeks II,* 12 Vet.App. at 353 (discussing (and then applying) principles of construction applicable to review of statute having "plain meaning"). This conclusion seems fanciful. At the very least, section 5110 is an ambiguous statute that requires much interpretation as to the interplay between its subsections (a) and (b)(1). If there *is* a plain meaning here, it is that subsection (b)(1) requires in this case a 70% or 100% rating by providing for an exception to subsection (a)'s limitation on the assignment of an effective date based upon "facts found".

Nonetheless, the Court blithely asserts that the *"plain meaning" is to the contrary. Meeks II, supra* (emphasis added). In doing so, the panel opinion in *Meeks II* ignores the uncategorical statutory com-

---

*comm. Ass'n v. FCC,* 117 F.3d 555, 564 (D.C.Cir.1997) (holding that agency's "ipse dixit conclusion, coupled with its failure to respond to contrary arguments . . . epitomizes arbitrary and capricious decision making"); *Local 825, Int'l Union of Operating Eng'rs v. NLRB,* 829 F.2d 458, 460 (3d Cir.1987) ("[a] position without reasoning has little power to persuade").

mand of section 5110(b)(1) that "[t]he effective date of *an award of disability compensation* to a veteran *shall be* the day following the date of the veteran's discharge or release if application therefor is received within one year from such date of discharge or release." 38 U.S.C. § 5110(b)(1) (emphasis added). Without explanation, the panel fails to address how, in light of the preambulatory words in 38 U.S.C. § 5110(a) ("[u]nless specifically provided otherwise in this chapter"), subsection (b)(1) does not "specifically provide[ ] otherwise" as to *both* "facts found" *and* application date, as provided for in subsection (a).

The Court's silence is especially problematic in view of the Supreme Court's injunction in *Brown v. Gardner* that when a statute involving veterans' benefits is unclear "interpretive doubt is to be resolved in the veteran's favor", *Gardner*, 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994) (citing *King v. St. Vincent's Hosp.*, 502 U.S. 215, 220–21, n. 9, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991)),[9] and the rule of statutory construction that requires courts to read all parts of a provision in a manner that gives meaning to all parts and renders none superfluous.[10] Without so much as a nod to these interpretive rules, *Meeks II* thus fails to explain how subsections (a) and (b)(1) can be read in their totality as providing *other than* that subsection (b)(1) supersedes all of subsection (a) when all of the criteria set forth in subsection (b)(1) are met. As indicated, such an interpretation would yield a 70% or 100% rating effective as of the DADD here, especially giving the benefit of the doubt to the claimant pursuant to *Gardner*.

### D. Interpretation of Law and Regulation

In view of that pro-veteran requirement of *Gardner, supra,* it would appear that the more straightforward reading of the statute, which would also produce a greater benefit to the veteran, is that the rating first assigned—in this case either 70% or 100%—based on the application submitted within one year after the DADD is the one that should be made effective retroactive to the DADD, as opposed to the 50% rating assigned by the 1997 BVA decision and affirmed by this Court in *Meeks II*.[11] As

**9.** *See also Hodge v. West,* 155 F.3d 1356, 1361, n. 1 (Fed.Cir.1998) (quoting *Gardner*); *Jones (Ethel) v. West,* 136 F.3d 1296, 1299, n. 2 (Fed.Cir.1998) (same); *Allen v. Brown,* 7 Vet.App. 439, 446 (1995) (en banc) (same).

**10.** *See Pennsylvania Dept. of Pub. Welfare v. Davenport,* 495 U.S. 552, 562, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990) (expressing "deep reluctance" to interpret statutory terms "so as to render superfluous other provisions in the same enactment" (citation omitted)); *Smith (William) v. Brown,* 35 F.3d 1516, 1523 (Fed. Cir.1994) (" 'in expounding [on] a statute, we must not be guided by a single sentence or member of a sentence, but [should] look to the provisions of the whole law ....' " (citing *United States Nat. Bank of Oregon v. Independent Ins. Agents of Am., Inc.,* 508 U.S. 439, 455, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993) (quoting *United States v. Heirs of Boisdore,* 49 U.S. (8 How.) 113, 122, 12 L.Ed. 1009 (1850)))); *Robinette v. Brown,* 8 Vet.App. 69 (1995) ("Court must read all sections of a statute together so as to yield a coherent and internally consistent result" (citing *Smith (William), supra*)); *Thompson (Charles) v. Brown,* 8 Vet.App. 169, 177 (1995) ("Court must construe general and specific statutes together so that each is part of a 'harmonious whole' " (quoting *Talley,* infra)); *Talley v. Derwinski,* 2 Vet.App. 282, 286 (1992) (" '[E]ach part or section [of a statute] should be construed in connection with every other part or section so as to produce a harmonious whole' " (quoting 2A N. Singer, *Sutherland on Statutory Construction* § 46.05 (4th ed.1984))); *In re Bailey,* 182 F.3d 860, 874–875 (Fed.Cir.1999) (Schall, J., dissenting) ("[a] statute is to be read in its entirety in a manner that yields a logical and sensible result and does not render a part of the statute superfluous" (citing, inter alia, *Ratzlaf v. United States,* 510 U.S. 135, 141, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994))).

**11.** Moreover, because the meaning of the statute is far from plain, the Court should have attempted to look beyond "the applicable statutory language itself", *Meeks II,* 12 Vet.App. at 354, and should have examined the pertinent legislative history. In this regard, the only historical comment that appears at all relevant to the meaning of amendments to the provisions of 38 U.S.C. § 5110 to liberalize award dates is a July 27, 1972, VA memorandum from VA's Chief Benefits Director to

between a 100% and 70% rating, we are certainly inclined toward the 100% rating because it totally superseded the "provisional" 70% rating. However, we would prefer to hear from the parties on this matter before deciding it. Alternatively, there are at least two possible statutory interpretations that might support a 50% rating as of the DADD.

*1.* **Wright v. Gober** *Dissent Theory.* In his dissenting opinion in *Wright v. Gober,* 10 Vet.App. 343, 351–52 (1997), Judge Kramer sets forth an interesting construct as a possible reading of the law and regulation together. He posits that such an interpretation could be derived from the reference to the "date entitlement arose" in VA's implementing regulation, 38 C.F.R. § 3.400(b)(2)(i), which could be read as though based on the "facts found" criterion set forth in 38 U.S.C. § 5110(a). On this basis, Judge Kramer theorized as follows: "Whereas section 5110(a) is ambiguous as to the superimposition of 'facts found' on section 5110(b)(1), ... the regulation implementing section 5110(b)(1) ... appears to superimpose a 'facts found' limitation on retroactivity". *Wright,* 10 Vet.App. at 352 (Kramer, J., dissenting).

Under the *Meeks II* panel opinion and the theory put forth in Judge Kramer's *Wright* dissent, if a compensable rating

VA's General Counsel (quoted in Judge Kramer's dissenting opinion in *Wright v. Gober, infra*) that described VA's legislative proposal to the First Session of the Ninety–Third Congress to amend 38 U.S.C. § 3010 (now 38 U.S.C. § 5110) to allow for liberalized effective dates for payment of disability compensation awards. The document stated in pertinent part:

The veteran who has just been discharged or released from active service has a great many things on his mind in order to satisfactorily adjust from the military to civilian way of life, the least of which may be his disability compensation claim from the VA. He is concerned with obtaining adequate and suitable housing for himself and/or his family and an adequate and suitable job. *If he delays in filing his claim for not more than a year, he has not been deprived of the compensation, since his award will be made effective the day following his discharge or release from service.*

were awarded on the basis of such application but the facts indicated that at the actual date of discharge the claimed condition *had not merited a compensable rating,* then the award effective as of the DADD would be 0%, with a staged rating [12] of whatever rating was thereafter appropriate based on "facts found". (This is in fact what occurred in this case when, in August 1989, the RO acted upon the C & P Director's advisory opinion and rated the veteran at 0% as of the DADD and then 100% as of January 16, 1985, at which point the evidence indicated that a 100% rating was warranted. *Meeks I,* 5 Vet. App. at 286.) We note that Judge Kramer's dissent was limited to exploration of the impact of the regulation on the interpretation of the statutory provisions and did not address whether the former was authorized by the latter.

*2. Compensable–Rating Theory.* Another possible interpretation of the statutory provisions that would also yield a 50% rating on these facts would be one that requires that a compensable (more than 0%) DADD rating be assigned in every case where *disability compensation* is awarded on the basis of an application submitted within one year after discharge.[13] Such an interpretation retains

*Wright,* 10 Vet.App. 343, 351 (1997) (Kramer, J., dissenting) (quoting Secretary's Appendix to Supplemental Memorandum in Response to Court Order, Volume I at 139) (emphasis added). The emphasized words above seem to suggest that the veteran should get the benefit of some retroactivity for the compensable rating assigned.

**12.** *See supra* note 2.

**13.** Under this theory, subsection (b)(1) of 38 U.S.C. § 5110—as contrasted with subsection (b)(2), which is written in evidence-specific terms—*requires* that a veteran who applies for disability compensation within one year after discharge and is ultimately awarded compensation based on that application (i.e., at least a 10% rating) must receive a compensable award (that is, "an award of disability compensation") retroactive to the DADD *regardless* of "facts found". For example, hy-

some meaning to the "[u]nless specifically provided otherwise" language and the command of subsection (b)(1) but gives maximum effect to the "facts found" provision of subsection (a) by limiting the subsection (b)(1) exception establishing a requirement that a retroactive compensable rating (at least 10%) must be assigned as of the DADD. That interpretation would be derived from the fact that subsection (a) specifically refers to "an award ... of *compensation*" and subsection (b)(1) to "an award of disability *compensation*", 38 U.S.C. § 5110(a), (b)(1) (emphases added), and do not appear to cover an award of service connection as to a zero-percent-rated disability. The term "compensation" is defined in section 101(13) of title 38, U.S.Code, as "a monthly *payment* made by the Secretary to a veteran because of service-connected disability...." 38 U.S.C. § 101(13) (emphasis added). The use of the word "payment" would seem conclusive of the interpretation that "compensation" in section 5110 refers to money.[14]

---

pothesize a veteran who applies in the eleventh month after separation at which point his or her disability is compensable at 10%, but it was *not* compensable on the DADD. That veteran would get a 10% rating effective on the DADD because that would be the minimum that subsection (b)(1) commands. Under this approach, therefore, subsection (b)(1) creates only a very limited exception to the "facts found" requirement of subsection (a), rather than no exception as in the *Meeks II* opinion. Suppose that, instead of 10% at the eleventh month after separation, the disability was 20%, would that mean that the effective date for the 20% must be the DADD? (Indeed, that situation is essentially what occurred in this case when the August 1989 RO decision assigned a 0% rating as of the DADD after assigning a 100% rating from January 1985. *Meeks I*, 5 Vet.App. at 286.) The answer would be "no". That's because all that subsection (b)(1) *needs* to do, in order to be effective and have meaning, *see supra* note 6, is to require the assignment of *a* compensable rating (the minimum rating under the applicable diagnostic code (DC), usually 10%) (which would be provided by virtue of subsection (b)(1)'s limited exception to "facts found") as of the DADD (which would apply by virtue of the subsection (b)(1) exception to the "date of application" limitation in subsection (a)). In other words, if, based on "facts found", the 20% rating would not be warranted on the DADD, then, a minimum compensable rating of 10% would be awarded under DC 6080.

14. In this regard, 38 U.S.C. § 1155 expressly directs that the Secretary "*shall* adopt and apply a schedule of ratings of reductions in earning capacity" (emphasis added). The section requires that "[t]he schedule *shall* be constructed so as to provide *ten grades of disability and no more*", specifically in 10 percentile increments, beginning at 10% up to 100%. 38 U.S.C. § 1155 (emphasis added). That is, section 1155, inter alia, expressly

prohibits the Secretary from adopting a schedule of ratings that contains anything other than ten *compensable* ratings, ranging from 10–100%, and prohibits any grade less than 10%. Hence, the 0% rating may not be a permissible part of the Rating Schedule adopted pursuant to section 1155 (part 4 of title 38, Code of Federal Regulations, is entitled "Schedule for Rating Disabilities"); *cf. Degmetich v. Brown*, 104 F.3d 1328, 1331 (Fed.Cir.1997) (discussing Secretary's regulations providing for zero percent ratings under VA's rating system). Indeed, it appears to be an oxymoron to describe as "zero" a rating under that Schedule, the function of which is to assess "*reductions* in earning capacity". 38 U.S.C. § 1155 (emphasis added). Thus, 38 C.F.R. § 4.31 (1998) (entitled "Zero percent evaluations") may constitute a violation of that section 1155 prohibition unless that regulation was prescribed pursuant to another authority, and it lists none.

However, it should be noted that numerous specific diagnostic codes expressly provide for a "0" rating in the diagnostic code tables. *See, e.g.*, 38 C.F.R. §§ 4.48a, DCs 6017, 6018, 6079; 4.87a, DC 6211; 4.88b, DC 6351; 4.89; 4.97, DCs 6514, 6724, 6817, 6839, 6846, 6847; 4.104, DCs 7112, 7120, 7121; 4.114, DCs 7301, 7311, 7314, 7332, 7336, 7338; 4.115a; 4.117, DCs 7700, 7705; 4.119, DC 7902; 4.130, DC 9440 (1998). There are also numerous references to the determining or the granting or presuming of service connection, without reference to compensation, made in several *statutory* provisions in chapter 11 and a few outside it. *See, e.g.,* 38 U.S.C. §§ 106(a)(2)(b), 1113(a), (b), 1116(a)(1)(B), (b)(1), (c)(1)(A), (B), 1117(b), 1118(a)(2)(A), 1133(b), (c), 1154(a), (b), 1159; *cf.* 38 U.S.C. §§ 1703(a)(1)(A), 1704(1)(B), 1710(a)(1)(A); *see also Gilpin v. West*, 155 F.3d 1353, 1356 (Fed.Cir.1998) (noting that "statutes governing other benefits besides compensation ... are limited to those veter-

## II. Conclusion

In sum, we believe that the Court should provide a coherent interpretation of section 5110(a) and (b)(1) in order to decide whether the DADD rating in this case is 50%, 70%, or 100%, and the Court's opinion in *Meeks II* is singularly lacking in such a rationale. The 50% rating can be sustained, in our view, only if "facts found" can somehow be applied from subsection (a). Based on the foregoing, we believe that the proper disposition of this appeal would be further briefing by the parties, or a remand to the Board, to address the question of the proper interpretation of the law and regulations governing effective dates as applied to the unusual fact situation of this case. We thus respectfully dissent from the denial of en banc consideration of this matter and the issuance of *Meeks II* as written.

ans who have a service-connected disability at the time of application" (citations omitted)); *Degmetich* 104 F.3d at 1332 (same). And numerous VA *regulations* refer to these terms. *See, e.g.,* 38 C.F.R. §§ 3.105 first paragraph, 3105(d), 3.157(b)(1), 3.200(b), 3.301(c)(1), 3.302 (headings only), 3.303(a), (d), 3.304(a), (d), (e), (f), 3.305(a), 3.307(a)(1), 3.308(a), 3.309(a), (b) (1998). Hence, it appears that the law and VA regulations contemplate and thus authorize awards of noncompensable service connection that are distinct from the payment of compensation. *See* 38 U.S.C. § 501(a)(1), (4) (authorizing Secretary to prescribe regulations that are "necessary or appropriate to carry out the laws administered by [VA] and [that] are consistent with those laws, *including*" those regarding "proof and evidence ... in order to establish the right to benefits under such laws" and those regarding "the manner ... of ... awards" (emphasis added)); *see also Gilpin, supra* (noting that court's role in reviewing Secretary's interpretation of statute regarding VA benefits is "clearly delineated" under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council,*

*Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), and sustaining thereunder Secretary's interpretation as "rational and permissible way to fill the 'gap' in the statute"); *Degmetich, supra* (sustaining as not "arbitrary" under *Chevron, supra,* Secretary's interpretation of statute regarding VA benefits when that interpretation comported with other provisions of statute "as a whole").

One reason for such noncompensable ratings is that they serve to qualify a veteran for certain VA medical care and contract care under chapter 17 of title 38, U.S.Code. *See, e.g.,* 38 U.S.C. §§ 1703(a)(1)(A), 1704(1)(B), 1710(a)(1)(A). Another purpose is that a veteran who has been adjudicated to have a service-connected disability but whose disability was found not compensable is exempt from having to reestablish such service connection upon the filing of a claim that that service-connected disability has subsequently increased in severity, because such a claim would be a claim for a rating increase of above 0% rather than a reopening of the service-connection question. *See Proscelle v. Derwinski,* 2 Vet.App. 629, 631–32 (1992).