Citation Nr: 1045618 
Decision Date: 12/06/10 Archive Date: 12/14/10

DOCKET NO. 09-20 170 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Milwaukee, 
Wisconsin

THE ISSUES

1. Entitlement to service connection for numbness of the penis.

2. Entitlement to service connection for bilateral lower 
extremity peripheral neuropathy.

3. Entitlement to an initial compensable evaluation for 
bilateral toenail onychomycosis.

REPRESENTATION

Appellant represented by: Wisconsin Department of Veterans 
Affairs

ATTORNEY FOR THE BOARD

J. Schroader, Associate Counsel

INTRODUCTION

The Veteran served on active duty from April 1951 to January 
1953.

These matters come before the Board of Veterans' Appeals (Board) 
on appeal from a July 2007 rating decision of the Department of 
Veterans Affairs (VA) regional office (RO) located in Milwaukee, 
Wisconsin that denied the Veteran's claims of entitlement to 
service connection for numbness of the penis and for bilateral 
lower extremity peripheral neuropathy (claimed as "foot 
numbness" due to cold injury), and that granted service 
connection for bilateral toenail onychomycosis with a 
noncompensable rating, effective October 31, 2006.

In August 2010, this appeal was remanded to the RO for further 
development. Such development has been completed and associated 
with the claims file, and this case is returned to the Board for 
further review.

The issue of entitlement to service connection for bilateral 
lower extremity peripheral neuropathy (claimed as "foot 
numbness" due to cold injury) is addressed in the REMAND portion 
of the decision below and is REMANDED to the RO via the Appeals 
Management Center (AMC), in Washington, DC.

Please note this appeal has been advanced on the Board's docket 
pursuant to 38 C.F.R. § 20.900(c) (2010). 38 U.S.C.A. 
§ 7107(a)(2) (West 2002).

FINDINGS OF FACT

1. The Veteran is not shown by the competent medical evidence of 
record to have a disability manifested by symptoms of numbness of 
the penis that is attributable to service or a service-connected 
disability.

2. The Veteran's bilateral toenail onychomycosis covers less 
than 5 percent of his entire body area and zero percent of his 
exposed body area, measures a total of 8.74 total square 
centimeters (less than 144 square centimeters), and requires no 
systemic therapy.

CONCLUSIONS OF LAW

1. Service connection for numbness of the penis is not 
warranted. 38 U.S.C.A. §§ 1110, 5107 (West 2002); 38 C.F.R. 
§ 3.310 (2009); 38 C.F.R. §§ 3.102, 3.303 (2010).

2. The criteria for the assignment of a compensable rating for 
bilateral toenail onychomycosis have not been met. 38 U.S.C.A. 
§§ 1155, 5107, 7104 (West 2002); 38 C.F.R. § 4.118, Diagnostic 
Codes 7802, 7806, 7813 (2010).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Veterans Claims Assistance Act of 2000 (VCAA)

With regard to the Veteran's claims for service connection for 
numbness of the penis and for an initial compensable evaluation 
for bilateral toenail onychomycosis, VA has met all statutory and 
regulatory notice and duty to assist provisions. See 38 U.S.C.A. 
§§ 5102, 5103(a), 5103A, 5106 (West 2002 & Supp. 2009); 38 C.F.R. 
§§ 3.159, 3.326(a) (2010).

Under the VCAA, when VA receives a complete or substantially 
complete application for benefits, it is generally required to 
"notify the claimant and the claimant's representative, if any, 
of any information and any medical or lay evidence not previously 
provided . . . that is necessary to substantiate the claim." 38 
U.S.C.A. § 5103(a)(1) (West Supp. 2009). As part of that notice, 
VA must "indicate which portion of that information and 
evidence, if any, is to be provided by the claimant and which 
portion, if any, the Secretary . . will attempt to obtain on 
behalf of the claimant." 38 U.S.C.A. § 5103(a)(1) (West Supp. 
2009). 

With regard to the Veteran's claim for service connection for 
numbness of the penis, the Board finds that a VCAA letter dated 
December 2006 fully satisfied the duty to notify provisions. See 
38 U.S.C.A. § 5103(a) (West Supp. 2009); 38 C.F.R. § 3.159(b)(1) 
(2010). The letter informed the Veteran of what information or 
evidence was needed to support his claim on a direct and 
secondary basis, what types of evidence the Veteran was 
responsible for obtaining and submitting to VA, and which 
evidence VA would obtain.

Because the Veteran's claim for service connection for numbness 
of the penis is denied, as explained below, the Board finds that 
any notice deficiencies regarding the assignment of disability 
ratings and effective dates is moot. See Dingess, 19 Vet. App. 
473.

With regard to the Veteran's claim for an initial compensable 
evaluation for bilateral toenail onychomycosis, where service 
connection has been granted and the initial rating has been 
assigned, the claim of service connection has been more than 
substantiated, as it has been proven. As such, 38 U.S.C.A. 
§ 5103(a) notice is no longer required since the purpose that the 
notice was intended to serve has been fulfilled. Furthermore, 
once a claim for service connection has been substantiated, the 
filing of a notice of disagreement with the rating of the 
disability does not trigger additional 38 U.S.C.A. § 5103(a) 
notice. Therefore, any defect as to 38 U.S.C.A. § 5103(a) notice 
is non-prejudicial. See Dingess v. Nicholson, 19 Vet. App. 473, 
490-491 (2006), aff'd sub nom. Hartman v. Nicholson, 483 F.3d 
1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 
(2007); Goodwin v. Peake, 22 Vet. App. 128 (2008) (where a claim 
has been substantiated after the enactment of the VCAA, the 
appellant bears the burden of demonstrating any prejudice from 
defective VCAA notice with respect to any downstream elements).

The Board also concludes that VA's duty to assist has been 
satisfied. All of the Veteran's relevant VA treatment records 
and private treatment records have been associated with the 
claims file. The Veteran has at no time referenced any 
outstanding records that he wanted VA to obtain.
VA's duty to assist also generally includes the duty to provide a 
VA examination or obtain a medical opinion when necessary to make 
a decision on the claim. See 38 C.F.R. § 3.159(c)(4) (2009).

In July 2007, the Veteran was provided with a VA genitourinary 
examination relating to his claim for numbness of the penis. In 
August 2010, this issue was remanded by the Board so that a 
supplemental VA medical opinion could be obtained. Subsequently, 
in August 2010, the requested supplemental VA medical opinion was 
prepared by the same examiner answering all of the questions 
posed by the Board in its August 2010 remand. Based thereon, the 
Board finds that there was substantial compliance with its remand 
directive. See Stegall v. West, 11 Vet. App. 268 (1998) (duty to 
ensure compliance with Board remand order). Furthermore, the 
Board finds that the July 2007 VA genitourinary examination 
report in tandem with the August 2010 VA medical opinion reflect 
that the examiner reviewed the claims file, examined the Veteran, 
elicited a history from him, provided the requested opinions, and 
provided adequate reasoning for the conclusions provided. In 
light of the above, the Board finds that the record contains 
sufficient evidence to make a decision with regard to the claim.

With regard to the Veteran's claim for a compensable initial 
evaluation for bilateral toenail onychomycosis, where the 
evidence of record does not reflect the current state of a 
veteran's disability, a VA examination must be conducted. 
Schafrath v. Derwinski, 1 Vet. App. 589 (1991); 38 C.F.R. § 
3.327(a) (2010) see also Green v. Derwinski, 1 Vet. App. 121 
(1991). In this regard, the Veteran was provided with VA 
examinations in July 2007 and January 2009 relating to his 
bilateral foot onychomycosis (including February 2009 addenda). 
While these examination reports reflected diagnosed 
onychomycosis, neither examination report addressed the rating 
criteria for the Veteran's condition. Therefore, in August 2010, 
the Board remanded this issue so that the Veteran would be 
provided with a new VA examination that addressed the rating 
criteria. Subsequently, in August 2010, a new VA examination was 
provided to the Veteran, which addresses the rating criteria as 
requested by the Board. Based thereon, the Board finds there has 
been substantial compliance with its remand directive, and the 
report contains sufficient information to rate the Veteran's 
disability. Also, the Board notes that there is no objective 
evidence indicating that there has been a material change in the 
severity of the Veteran's service-connected diabetes mellitus 
since he was last examined. See 38 C.F.R. § 3.327(a) (2010). 
The duty to assist does not require that a claim be remanded 
solely because of the passage of time since an otherwise adequate 
examination was conducted. VAOPGCPREC 11-95. 

As there is no indication that any failure on the part of VA to 
provide additional notice or assistance reasonably affects the 
outcome of this case, the Board finds that any such failure is 
harmless. See Mayfield v. Nicholson, 19 Vet. App. 103 (2005), 
rev'd on other grounds, Mayfield v. Nicholson, 444 F.3d 1328 
(Fed. Cir. 2006).

II. Analysis

A. Numbness of the Penis

The Veteran served on active duty from April 1951 to January 1953 
in the United States Navy. He claims that he incurred numbness 
of his penis as a result of service, to include as a result of 
either a dorsal slit procedure or circumcision performed in 
service. In the alternative, the Veteran claims he has numbness 
of the penis secondary to his service-connected urethritis.

A July 2007 VA examination report (genitourinary) reflects that 
the Veteran reported a history of experiencing numbness of his 
penis since around 1987 (although the Board notes that the 
Veteran said it began in 1995 in a November 2006 statement 
submitted in support of his claim). The examiner noted that the 
Veteran's service treatment records reflect that he was 
hospitalized in September 1952 for treatment of balanitis 
following a dorsal slit procedure that was performed to treat 
severe phimosis. The examiner also noted that the Veteran was 
presently followed for a prostate condition. On physical 
examination, no evidence of sensory loss on shaft, glans, or 
foreskin remnant was noted, as well as the fact that the Veteran 
"withdrew vigorously" when a cotton-tipped applicator was 
inserted slightly into the meatus. The examiner recorded a 
diagnosis of "urethritis 1952, no evidence of present 
activity." When prompted on the Form 2507 regarding "problem 
associated with diagnosis," the examiner noted "numbness in 
penis."

In August 2010, the Board remanded this issue to obtain 
clarification as to whether the Veteran's complaints of numbness 
of his penis related to a particular disorder, and if so, whether 
such disorder was related to the Veteran's service-connected 
urethritis, his in-service dorsal slit procedure, or his reported 
history of a circumcision procedure in service. Subsequently, an 
August 2010 VA medical opinion was prepared by the same VA 
examiner. In his August 2010 medical opinion, the examiner 
opined that the Veteran's complaints of numbness of the penis 
were not related to any diagnosed disorder because there was no 
numbness of the Veteran's penis found on examination. The 
examiner explained that on examination (in July 2007), when a 
cotton swab was gently inserted slightly into the meatus, the 
Veteran withdrew vigorously. The examiner further explained that 
complications of the Veteran's service-connected urethritis would 
most likely have been a urethral stricture, which the examiner 
noted would be highly unlikely with properly treated urethritis. 
The examiner also noted that even if the Veteran developed 
urethral stricture, it would not cause numbness of the penis, but 
rather, it might cause obstructive problems, which the Veteran 
denied on examination. The examiner went on to opine that the 
Veteran's reported symptoms of urge incontinence, urgency, 
nocturia, and loss of bladder control are all lower urinary tract 
symptoms attributable to an irritable bladder, usually associated 
with prostatic hypertrophy. The examiner went on to explain 
further that the Veteran's symptomatology was common in men with 
prostatic hypertrophy, and that his symptoms are not 
attributable, in standard medical literature, to urethritis, a 
dorsal slit procedure, or circumcision.

In general, applicable laws and regulations state that service 
connection may be granted for disability resulting from a disease 
or injury incurred in or aggravated by military service. 38 
U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303. Service connection 
may also be granted for a disease first diagnosed after discharge 
when all of the evidence, including that pertinent to service, 
establishes that the disease was incurred in service. 38 C.F.R. 
§ 3.303(d).

A disability which is proximately due to, or results from, 
another disease or injury for which service connection has been 
granted shall be considered a part of the original condition. 38 
C.F.R. § 3.310(a) (2009). The Board also notes that secondary 
service connection on the basis of aggravation is permitted under 
38 C.F.R. § 3.310, and compensation is payable for that degree of 
aggravation of a non-service-connected disability caused by a 
service- connected disability and not due to the natural progress 
of the nonservice-connected disease. Allen v. Brown, 7 Vet. App. 
439 (1995).

Effective October 10, 2006, 38 C.F.R. § 3.310 was amended to 
implement the holding in Allen for secondary service connection 
on the basis of the aggravation of a nonservice- connected 
disorder by service-connected disability. The amendment 
essentially codifies Allen with language that requires that a 
baseline level of severity of the nonservice-connected disease or 
injury must be established by medical evidence created before the 
onset of aggravation. However, given the possibility that these 
changes could potentially be interpreted as substantive, and 
because the Veteran's claim was pending before the regulatory 
change was made, the Board will apply the version of 38 C.F.R. § 
3.310 that was in effect before the change, which arguably favors 
the claimant.

For disabilities claimed on both a direct and secondary basis, 
the threshold requirement for service connection to be granted is 
competent medical evidence of the current existence of a claimed 
disorder. See Degmetich v. Brown, 104 F.3d 1328 (1997); Brammer 
v. Derwinski, 3 Vet. App. 223 (1992). In light of the above 
medical evidence of record, the Board finds that the Veteran is 
not shown to have a disorder involving numbness of the penis that 
is attributable to service or a service-connected disability. In 
fact, as noted, the VA examiner could not find evidence of 
numbness on VA examination, and the VA examiner specifically 
noted that a disability manifested by numbness was not diagnosed. 
In this regard, the examiner explained that complications of the 
Veteran's service-connected urethritis would most likely be 
urethral stricture, which the examiner noted would be highly 
unlikely with properly treated urethritis. The examiner also 
noted that even if the Veteran developed urethral stricture, it 
would not cause numbness of the penis, but rather, it might cause 
obstructive problems, which the Veteran denied on examination.

The Board notes that examiner did indicate the presence of other 
symptoms, including urge incontinence, urgency, nocturia, and 
loss of bladder control are all lower urinary tract symptoms 
attributable to an irritable bladder. The examiner went on to 
explain further, however, that the Veteran's symptomatology was 
common in men with prostatic hypertrophy, and that his symptoms 
are not attributable, in standard medical literature, to 
urethritis, a dorsal slit procedure, or circumcision.

The Board finds the opinion of the VA examiner to be the most 
probative evidence of record as to whether the Veteran has a 
disability manifested by numbness of the penis or other urinary 
symptomatology that is related to service or a service-connected 
disability. Without a current diagnosis of a disorder involving 
numbness of the penis, there may be no service connection for the 
claimed disability. See id. Furthermore, while other 
symptomatology was found, the examiner explained in detail why 
such disability was not related to service or a service-connected 
disability. The Board also notes that in a November 2007, Dr. 
M.P. a urologist with Franciscan Skemp, opined that "I, as a 
urologist, have no idea why glands numbness would be related to a 
dorsal slit," which statement is consistent with the opinion 
provided by the VA examiner.

The Board acknowledges an August 2006 letter written by Dr. C.P., 
PA-C, a private physician, in which he noted the Veteran's 
history of urethritis and dorsal slit procedure, and reported 
history of a circumcision and subsequent symptoms of penis 
numbness since. The Board notes, however, that no diagnosed 
disorder was noted by Dr. C.P. The Board further notes that the 
transcription of lay history does not transform it into medical 
evidence. LeShore v. Brown, 8 Vet. App. 406 (1995).

The Board has considered all of the Veteran's lay statements 
regarding experiencing numbness of the penis due to his in-
service dorsal slit procedure, his reported history of a 
circumcision in service, and his assertion, in the alternative, 
that the condition was incurred secondary to his service-
connected urethritis. Certainly, the Veteran is competent to 
report experiencing numbness or other symptomatology capable of 
lay observation, and there is no reason to doubt his credibility. 
See Charles v. Principi, 16 Vet. App. 370 (2002). The Veteran is 
not necessarily competent, however, to etiologically link his 
complaints to service or to a service-connected disorder. See 
Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007) (explaining 
in footnote 4 that a veteran is competent to provide a diagnosis 
of a simple condition such as a broken leg, but not competent to 
provide evidence as to more complex medical questions). 
Therefore, while the Board has considered the Veteran's 
complaints, the Board ultimately places more weight on the 
opinion and detailed clinical findings of the competent health 
care specialist.

For these reasons, the Board concludes that the preponderance of 
the evidence is against granting service connection for numbness 
of the penis, and the benefit of the doubt rule is not for 
application.

B. Onychomycosis

Disability evaluations are determined by evaluating the extent to 
which a veteran's service-connected disability adversely affects 
his or her ability to function under the ordinary conditions of 
daily life, including employment, by comparing his or her 
symptomatology with the criteria set forth in the Schedule for 
Rating Disabilities. The percentage ratings represent as far as 
can practicably be determined the average impairment in earning 
capacity resulting from such diseases and injuries and the 
residual conditions in civilian occupations. Generally, the 
degree of disabilities specified are considered adequate to 
compensate for considerable loss of working time from 
exacerbation or illness proportionate to the severity of the 
several grades of disability. 38 U.S.C.A. § 1155 (West 2002); 38 
C.F.R. § 4.1 (2009). Separate diagnostic codes identify the 
various disabilities and the criteria for specific ratings. If 
two disability evaluations are potentially applicable, the higher 
evaluation will be assigned to the disability picture that more 
nearly approximates the criteria required for that rating. 
Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 
(2009). Any reasonable doubt regarding the degree of disability 
will be resolved in favor of a veteran. 38 C.F.R. § 4.3 (2009).

A veteran's entire history is reviewed when making a disability 
determination. 38 C.F.R. § 4.1 (2009). When a veteran timely 
appeals an initial rating for a service-connected disability 
within one year of the rating decision, VA must consider whether 
the veteran is entitled to "staged" ratings to compensate him 
for periods of time since the filing of his claim when his 
disability may have been more severe than others. Fenderson v. 
West, 12 Vet. App. 119 (1999).

The Veteran's bilateral toenail onychomycosis is currently 
assigned a noncompensable evaluation under Diagnostic Code 7813, 
effective October 31, 2006. See 38 C.F.R. § 4.118 (2010). The 
Veteran seeks a higher initial evaluation.

As an initial matter, the Board notes that the regulations 
pertaining to rating skin disabilities were revised, effective 
October 23, 2008. However, those revised provisions are 
applicable only to claims received on or after October 23, 2008. 
Because the current claim was received prior to that date, those 
revisions do not apply in this case. 73 Fed. Reg. 54708 (Sept. 
23. 2008).

Diagnostic Code 7813 provides that certain skin conditions, 
including onychomycosis (i.e., "tinea unguium") are to be rated 
as disfigurement of the head, face or neck (diagnostic code 
7800); scars (diagnostic codes 7801, 7802, 7803, 7804, or 7805), 
or dermatitis (diagnostic code 7806), depending upon the 
predominant disability. See 38 C.F.R. § 4.118 (2008). 
Diagnostic Code 7800 relates to scars of the head, face, and 
neck. Diagnostic Code 7801 relates to scars other than on the 
head, face, and neck that are deep or cause limitation of motion. 
Diagnostic Code 7803 relates to scars that are unstable. 
Diagnostic Code 7804 relates to scars that are painful on 
examination. Diagnostic Code 7805 relates to other scars that 
limit function of the affected body part. The only other 
diagnostic codes referenced by Diagnostic Code 7813 that may be 
appropriate for rating the Veteran's onychomycosis are Diagnostic 
Code 7802, relating to superficial scars that do not cause 
limitation of motion, or Diagnostic Code 7806, relating to 
dermatitis or eczema. 

Diagnostic Code 7802 provides a compensable, 10 percent rating 
for scars that involve areas of 144 square inches (929 sq. cm) or 
greater. 38 C.F.R. § 4.118 (2008).

Under Diagnostic Code 7806, dermatitis or eczema is evaluated at 
10 percent disabling if it affects at least 5 percent, but less 
than 20 percent of the entire body, or at least 5 percent, but 
less than 20 percent of exposed areas, or; intermittent system 
therapy such as corticosteroids or other immunosuppressive drugs 
are required for a total duration of less than six weeks during 
the past 12-month period. 38 C.F.R. § 4.118 (2008). A 30 
percent rating is not warranted unless 20 to 40 percent of the 
entire body or 20 to 40 percent of exposed areas are affected, 
or; systemic therapy such as corticosteroids or other 
immunosuppressive drugs are required for a total duration of six 
weeks or more, but not constantly, during the past 12-month 
period. 

VA examination reports dated in July 2007 and January 2009 both 
reflect diagnoses of bilateral onychomycosis of the Veteran's 
toenails, but neither of the VA examination reports include any 
notation as to the size of the affected area in inches or 
centimeters, and neither reflects the percentage of the Veteran's 
entire body affected or of the exposed area affected.

The August 2010 VA examination report reflects that the examiner 
examined the Veteran's feet and recorded a diagnosis of bilateral 
toenail onychomycosis, and noted that the condition affected all 
of the Veteran's toenails. He also recorded the dimensions of 
the Veteran's affected toenails, as follows: left great toenail, 
2.38 sq. cm; left second toenail, .77 sq. cm; left third toenail, 
.54 sq. cm; left fourth toenail, .48 sq. cm; left fifth toenail, 
.15 sq. cm; right great toenail, 2.60 sq. cm; right second 
toenail, .66 sq. cm; right third toenail, .48 sq. cm; right 
fourth toenail, .40 sq. cm; right fifth toenail, .28 sq. cm; 
total area of all toenails on both feet, 8.74 sq. cm. Also, the 
examiner opined that the percentage of the exposed area of the 
Veteran's body was none, and that the percentage of his total 
body area affected was less than five percent. The examiner also 
noted that systemic therapy was not required for the Veteran's 
bilateral toenail onychomycosis, and that the Veteran had not 
received any medical or podiatry care for the condition, and that 
the Veteran reported that he cuts the toenails himself. The 
Veteran also reported that his toenails were not painful.

As noted above, the Veteran reported to the August 2010 VA 
examiner that he had never sought medical treatment for his 
bilateral toenail onychomycosis. In that regard, the Board notes 
that none of the treatment records associated with the claims 
file reflect that the Veteran ever received any treatment for the 
condition, to include any systemic therapy, nor do they reflect 
any measurements of the affected area (in centimeters or 
percentages).

In light of the above, the Board finds that the Veteran's 
bilateral toenail onychomycosis symptoms do not meet the 
compensable rating criteria under Diagnostic Code 7802 or 7806. 
As noted above, a compensable rating under Diagnostic Code 7802 
requires a total affected area of at least 144 square 
centimeters, whereas the total affected area of the Veteran's 
bilateral toenail onychomycosis was measured on examination in 
August 2010 as only 8.74 square centimeters. Also, as noted 
above, a compensable rating under Diagnostic Code 7806 requires 
an affected area of at least 5 percent of the entire body or of 
exposed areas, or that the condition require intermittent 
systemic therapy such as corticosteroids, but the examiner in 
August 2010 noted that the affected area was less than 5 percent 
of the Veteran's entire body and none of his exposed areas, and 
that it did not require intermittent systemic therapy. There is 
no other evidence of record that reflects measurements of the 
affected area or that the condition ever required intermittent 
systemic therapy and, as noted above, there is no other 
Diagnostic Code that would entitle the Veteran to a compensable 
rating. 

The Board has also considered the potential application of other 
various provisions, including 38 C.F.R. § 3.321(b)(1), for 
exceptional cases where scheduler evaluations are found to be 
inadequate. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991). 
The Board notes, however, that there is no evidence of record 
that the Veteran's onychomycosis ever interfered with his 
employment or required any period of hospitalization, and it has 
not otherwise rendered impractical the application of the regular 
schedular standards utilized to evaluate the severity of the 
disability. Therefore, the Board finds that the requirements for 
an extraschedular evaluation under 38 C.F.R. § 3.321(b)(1) have 
not been met. Bagwell v. Brown, 9 Vet. App. 337 (1996); Shipwash 
v. Brown, 8 Vet. App. 218 (1995).

In summary, the Board finds that the criteria for a compensable 
rating for the Veteran's bilateral toenail onychomycosis have not 
been met. Assignment of staged ratings is not for application. 
See Fenderson v. West, 12 Vet. App. 119 (1999).

ORDER

Entitlement to service connection for numbness of the penis is 
denied.

Entitlement to an initial compensable evaluation for bilateral 
toenail onychomycosis is denied.

REMAND

The Veteran claims that he has bilateral lower extremity 
peripheral neuropathy (claimed as "foot numbness") as a result 
of cold injuries he incurred in service in Korea.

The Board notes that in August 2010, the Board remanded this case 
so that an updated Form 21-4142 authorization and consent could 
be requested from the Veteran so that certain private treatment 
records dated from January 1997 to October 2002 from Gunderson 
Healthcare (a.k.a. Gundersen Lutheran, see December 2006 Report 
of Contact) identified by the Veteran as relating to his claim 
could be requested by the RO. Pursuant to the Board's remand 
directive, in August 2010, the RO sent a letter to the Veteran 
with a blank Form 21-4142 requesting that he complete and return 
the form, authorizing VA to obtain the records from Gundersen 
Healthcare. More than 30 days later, the Veteran had not 
responded to the RO's request for the authorization form, and 
this issue was therefore re-certified to the Board for further 
review. Meanwhile, however, in September 2010, the Veteran 
mailed the requested Form 21-4142 to the RO, which form was in 
turn forwarded to the Board. Because the requested Form 21-4142 
authorizing VA to obtain certain private treatment records 
identified as relevant by the Veteran has been received, another 
remand is so that the records may be requested by the RO. See 
38 U.S.C.A. § 5103(a) (West Supp. 2009); 38 C.F.R. § 3.159; see 
also Stegall v. West, 11 Vet. App. 268 (1998).

Accordingly, the case is REMANDED for the following action:

1. Request copies of all of the private 
treatment records relating to the Veteran's 
claimed bilateral lower extremity peripheral 
neuropathy (also referred to as "foot 
numbness") dated from January 1997 to 
October 2002 from Gundersen Lutheran (a.k.a. 
Gundersen Healthcare), and associate any 
records received with the claims file. If 
the records are found to be unavailable, this 
should be specifically noted in the claims 
file. Also, if the facility responds that 
the records cannot be provided without 
payment of a fee, please include a copy of 
such notification in the claims file.

2. Then, readjudicate the Veteran's claim. 
If the claim remains denied, the Veteran 
should be provided a new Supplemental 
Statement of the Case (SSOC). After the 
Veteran and his representative have been given 
the applicable time to submit additional 
argument, the claim should be returned to the 
Board for further review.

The appellant has the right to submit additional evidence and 
argument on the matter or matters the Board has remanded. 
Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law 
requires that all claims that are remanded by the Board of 
Veterans' Appeals or by the United States Court of Appeals for 
Veterans Claims for additional development or other appropriate 

action must be handled in an expeditious manner. See 38 U.S.C.A. 
§§ 5109B, 7112 (West Supp. 2009).

____________________________________________
MICHAEL LANE
Veterans Law Judge, Board of Veterans' Appeals

 Department of Veterans Affairs