Citation Nr: 1228230 
Decision Date: 08/16/12 Archive Date: 08/21/12

DOCKET NO. 09-29 224 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUES

1. Entitlement to service connection for bilateral hearing loss.

2. Entitlement to service connection for tinnitus.

3. Entitlement to an initial compensable disability rating for service-connected peripheral neuropathy of the right lower extremity.

4. Entitlement to an initial compensable disability rating for service-connected peripheral neuropathy of the right upper extremity.

5. Entitlement to an initial compensable disability rating for service-connected peripheral neuropathy of the left upper extremity. 


REPRESENTATION

Appellant represented by: Georgia Department of Veterans Services


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

B. Berry, Associate Counsel


INTRODUCTION

The Veteran served on active duty from April 1968 to March 1970.

These matters come to the Board of Veterans' Appeals (Board) on appeal from a March 2007 rating decision that denied entitlement to service connection for bilateral hearing loss and tinnitus by the Department of Veterans Affairs (VA) Regional Office (RO) in Decatur, Georgia and a September 2010 rating decision that granted entitlement to service connection for peripheral neuropathy of the bilateral upper extremity and right lower extremity by the VA RO in St. Petersburg, Florida.

With respect to the issues of entitlement to service connection for bilateral hearing loss and tinnitus, the RO received the Veteran's substantive appeal in August 2009 after the expiration of the appeal period. The RO mailed the statement of the case to the Veteran in May 2009. In response, the Veteran requested that the RO reconsider the decision made in the May 2009 statement of the case, because it appeared that the RO overlooked and did not discuss pertinent medical evidence previously submitted by the Veteran. The RO did not consider this a substantive appeal. The RO reviewed the evidence in the claims file, including the specific evidence noted by the Veteran and issued a supplemental statement of the case in July 2009. Thereafter, the Veteran submitted a substantive appeal in August 2009. An August 2011 statement by the Veteran indicates that he believed that his appeal for hearing loss and tinnitus were still pending. A report of contact dated in January 2012 indicates that the RO considered the Veteran's claims of entitlement to service connection for hearing loss and tinnitus were still on appeal and requested that the Veteran's representative submit a statement in the appealed case. Thereafter, the issues were certified for appeal to the Board. The U.S. Court of Appeals for Veterans Claims (Court) has held that the filing period for a substantive appeal in a claim for VA benefits is not jurisdictional, and VA may waive any issue of timeliness in the filing of a substantive appeal, either explicitly or implicitly. Percy v. Shinseki, 23 Vet. App 37, 45 (2009) (as the RO had never addressed the issue of timeliness in the SOC and the Veteran was not informed that there was a timeliness issue until his claim was before the Board, the Court determined that the RO had essentially waived any objections it might have offered to the timeliness, and had implicitly accepted the Veteran's appeal). In light of the fact that the RO notified the Veteran's representative that this issue was still on appeal and the Veteran's statement in August 2011 indicate that he thought his appeal with respect to these issues were still pending, waives any questions regarding the adequacy or timeliness of his substantive appeal. As such, the Board will adjudicate the issues of entitlement to service connection for bilateral hearing loss and tinnitus.

The issues of entitlement to service connection for right ear hearing loss and tinnitus and entitlement to an initial increased rating for bilateral upper extremities and right lower extremity are addressed in the REMAND portion of the decision below and are REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC.


FINDINGS OF FACT

1. A left ear hearing loss disability was not noted upon the Veteran's entrance to military service and he manifested left ear hearing loss during service. 

2. The evidence does not clearly and unmistakably demonstrate that the Veteran's left ear hearing loss preexisted military service. 

3. The evidence of record indicates that the Veteran had a continuity of left ear hearing loss since military service.


CONCLUSION OF LAW

Left ear hearing loss was incurred during active military service. 38 U.S.C.A. § 1110 (West 2002); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.385 (2011).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Veterans Claims Assistance Act of 2000

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), the United States Department of Veterans Affairs (VA) has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 and Supp. 2011); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2011). In this case, the Board is granting in full the benefit sought on appeal regarding the Veteran's service connection claim for left ear hearing loss. Accordingly, assuming, without deciding, that any error was committed with respect to either the duty to notify or the duty to assist, such error was harmless and will not be further discussed.

II. Merits of the Claim for Service Connection

The Veteran filed a service connection claim for bilateral hearing loss in March 2006. He contends that the onset of his hearing loss was during service in March 1970. 

Service connection may be granted to a veteran for a disability resulting from a disease or injury incurred in or aggravated by military service. 38 U.S.C.A. §§ 1110, 1131 (West 2002); 38 C.F.R. § 3.303 (2011). For the showing of chronic disease in service, there must be a combination of manifestations sufficient to identify the disease entity and sufficient observation to establish chronicity at the time. If chronicity in service is not established, evidence of continuity of symptoms after discharge is required to support the claim. 38 C.F.R. § 3.303(b). Service connection may be granted for a disease diagnosed after discharge when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). In addition, service connection may be presumed for certain chronic diseases that are manifested to a compensable degree within one year after separation from service. 38 U.S.C.A. §§ 1101, 1112; 38 C.F.R. §§ 3.307, 3.309(a).

In general, to establish service connection for a claimed disorder, there must be (1) medical evidence of current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) evidence of a nexus between the claimed in-service disease or injury and the current disability. See Hickson v. West, 12 Vet. App. 247, 253 (1999); Degmetich v. Brown, 104 F.3d 1328 (Fed. Cir. 1997). Such determination is based on an analysis of all the evidence of record and evaluation of its credibility and probative value. Baldwin v. West, 13 Vet. App. 1, 8 (1999).

For purposes of applying VA laws, impaired hearing is considered a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, and 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, and 4000 Hertz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385 (2011). Additionally, the Court has held that the threshold for normal hearing is from 0 to 20 decibels, and that threshold levels above 20 decibels indicate at least some degree of hearing loss. Hensley v. Brown, 5 Vet. App. 155 (1993). 

In assessing the Veteran's service connection claim for hearing loss, the Board must first determine whether the Veteran has a current hearing disability under VA regulations. As noted above, hearing loss is determined for VA purposes using the criteria provided under 38 C.F.R. § 3.385. An August 2006 VA audiology examination report shows auditory thresholds in the left ear of 40 decibels (dB) or higher in at least three of the required frequencies. The examiner determined that the pure tone audiometric results showed the presence of a sloping sensorineural hearing loss. Thus, the medical evidence of record shows that the Veteran has a current diagnosis of a left ear hearing loss disability.

As the evidence indicates that the Veteran may have had left ear hearing loss prior to military service, the Board must initially determine whether the Veteran's left hearing loss preexisted enlistment into active service. VA law provides that a Veteran is presumed to be in sound condition, except for defects, infirmities or disorders noted when examined, accepted, and enrolled for service, or where clear and unmistakable evidence establishes that an injury or disease existed prior to service and was not aggravated by service. 38 U.S.C.A. §§ 1111, 1132, 1137. The presumption of soundness attaches only where there has been an induction examination during which the disability about which the Veteran later complains was not detected. See Bagby v. Derwinski, 1 Vet. App. 225, 227 (1991). The regulations provide expressly that the term "noted" denotes "[o]nly such conditions as are recorded in examination reports," 38 C.F.R. § 3.304(b), and that "[h]istory of pre-service existence of conditions recorded at the time of examination does not constitute a notation of such conditions." Id. at (b)(1).

In essence, when no preexisting condition is noted upon entry into service, the Veteran is presumed to have been sound upon entry. The burden then falls on the government to rebut the presumption of soundness by clear and unmistakable evidence that the Veteran's disability was both preexisting and not aggravated by service. VAOPGCPREC 3-2003; see also Wagner v. Principi, 370 F.3d 1089 (Fed. Cir. 2004). The Veteran is not required to show that the disease or injury increased in severity during service before VA's duty under the second prong of this rebuttal standard attaches. Id. The government may show a lack of aggravation by establishing that there was no increase in disability during service or that any increase in disability was due to the natural progress of the preexisting condition. 38 U.S.C.A. § 1153. If this burden is met, then the Veteran is not entitled to service-connected benefits. However, if the government fails to rebut the presumption of soundness under section 1111, the Veteran's claim is one for service connection. This means that no deduction for the degree of disability existing at the time of entrance will be made if a rating is awarded. See 38 C.F.R. § 3.322.

On the other hand, if a preexisting disorder is noted upon entry into service, the Veteran cannot bring a claim for service connection for that disorder, but the Veteran may bring a claim for service-connected aggravation of that disorder. In that case, section 1153 applies and the burden falls on the Veteran to establish aggravation. See Jensen v. Brown, 19 F.3d 1413, 1417 (Fed. Cir. 1994). If the presumption of aggravation under section 1153 arises, the burden shifts to the government to show a lack of aggravation by establishing "that the increase in disability is due to the natural progress of the disease." 38 U.S.C. § 1153; see also 38 C.F.R. § 3.306; Jensen, 19 F.3d at 1417; Wagner, 370 F. 3d at 1096.

The Veteran was provided with a pre-enlistment examination dated in July 1966. The Board notes that prior to November 1967, the service department reported audiometric test results under the American Standard Associates (ASA) scale. The Department of Defense adopted the International Standards Organization (ISO) scale in November 1967. In July 1966, VA adopted the ISO standard, which is the standard applied in 38 C.F.R. § 3.385. It is assumed that unless otherwise specified that any audiometric test results prior to November 1967 are reported using the ASA scale. Therefore, to compare the threshold hearing levels to later examinations, the ASA units must be converted to the International Standard Organization (ISO) units. The original ASA units will be shown in parenthesis. The July 1966 pre-enlistment examination shows the pure tone thresholds in the left ear were 20 (5) dB at 500 Hz, 15 (5) dB at 1000 Hz, 30 (20) dB at 2000 Hz, 40 (30) at 3000 Hz and 20 (15) dB at 4000 Hz. These results indicate that the Veteran had a pre-existing hearing loss disability as the Veteran met the criteria for hearing impairment under VA regulations with a pure tone threshold of 40 dB at one of the required frequencies. However, the Veteran was also provided with an enlistment examination dated in April 1968 upon entrance into active military service. The enlistment examination revealed that that the Veteran had normal hearing in the left ear with the following pure tone thresholds: 10 dB at 500 Hz, 0 dB at 1000 Hz, 0 dB at 2000 Hz, 0 at 3000 Hz and 0 dB at 4000 Hz. As the April 1968 enlistment examination reveals normal hearing upon entrance into military service, the Board concludes that the Veteran's left ear hearing loss was not noted upon entry into service; and, therefore, the Veteran is presumed to have been sound upon entry. 

As the presumption of soundness applies, the burden shifts to the government to rebut the presumption of soundness by clear and unmistakable evidence that the Veteran's disability was both preexisting and not aggravated by service. In this case, as noted above, the evidence shows that the Veteran may have had a left ear hearing loss disability at the pre-enlistment examination in November 1967. There is no other evidence besides the results in the pre-enlistment examination indicating that the Veteran had a left ear hearing disability prior to service. Furthermore, the Veteran demonstrated normal hearing in the left ear at the April 1968 enlistment examination, approximately a half after the pre-enlistment examination. As there is conflicting evidence of record prior to the Veteran entering into service, the Board concludes that there is no clear and unmistakable evidence that the Veteran's left ear hearing loss disability pre-existed active military service.

In the absence of clear and unmistakable evidence establishing preexisting left ear hearing loss, the Board concludes that the presumption of soundness attaches. As the presumption of soundness applies to the Veteran's claim of entitlement to service connection for left ear hearing loss, the analysis turns to whether the evidence of record establishes that a particular injury or disease resulting in disability was incurred during active military service. See 38 U.S.C.A. §§ 1110.

With respect to direct service connection, the Veteran's service treatment records show that the Veteran was diagnosed with partial deafness in the left ear in the separation examination in March 1970. The pure tone thresholds for the Veteran's left ear in the March 1970 separation examination also reveals that the Veteran had 40 dB at 4000 Hz. Thus, the Veteran's left ear hearing loss met VA's definition of a hearing impairment in March 1970 during active military service. Based on the foregoing, the Board concludes that the record contains medical evidence showing that the Veteran had left ear hearing loss during active military service. 

The Board also notes that the Veteran indicated that the onset of his hearing loss was during service due to loud noise exposure and that he has had problems with hearing for a long time. See March 2006 claim, August 2006 VA examination, and August 2009 substantive appeal. The Veteran is competent to report symptoms of decreased hearing since service. See Layno v. Brown, 6 Vet. App. 465, 469 (1994) (the veteran as a lay person is competent to report information of which he has personal knowledge, i.e., information that he can gather through his senses). There is nothing in the record that indicates these statements are not credible. In fact, it appears that these statements are consistent with a September 1991 treatment record that shows that the Veteran had a history of mild hearing loss from Vietnam. The Board also finds it relevant that there is no medical opinion of record that shows the Veteran's current left ear hearing loss disability is not etiologically related to active military service. 

In light of the fact that the Veteran was sound upon entrance into service, he was diagnosed with partial deafness of the left ear at the March 1970 separation examination, he met VA's definition of a hearing disability in the left ear at separation from service, there is evidence of continuity of symptomatology since service and the Veteran has a current left ear hearing disability, the Board finds that the evidence is in relative equipoise with respect to whether the Veteran's left ear hearing loss is related to military service. Resolving all benefit of the doubt in favor of the Veteran, the Board finds that the Veteran's current diagnosis of left ear hearing loss is related to active military service. Accordingly, the claim of entitlement to service connection for left ear hearing loss is warranted.


ORDER

Entitlement to service connection for left ear hearing loss is granted.


REMAND

With respect to the Veteran's service connection claims for right ear hearing loss and tinnitus, the Veteran was provided with a VA examination in August 2006 and VA medical opinion in January 2007. As an initial matter, with respect to the January 2007 VA opinion, the examiner was asked to answer the question of whether the Veteran's hearing loss was permanently worsened during military and if so, whether it was due to the natural progression of the disability. This is not the correct issue before the examiner, as the Veteran was sound upon entrance into service. In this regard, although the July 1966 pre-induction examination shows that the Veteran had a pre-existing hearing loss disability that met the criteria for hearing impairment under VA regulations in the right ear, the April 1968 enlistment examination reveals normal hearing upon entrance into military service. Therefore, the Board concludes that the Veteran's right ear hearing loss was not noted upon entry into service; and, therefore, the Veteran is presumed to have been sound upon entry. Furthermore, there is no clear and convincing evidence of record that the Veteran had a right ear hearing loss disability prior to service. Thus, the correct issue before the examiner is whether the Veteran's current right ear hearing loss disability is related to military service. 

In addition, the examiner in January 2007 noted that an audiogram conducted as part of a pre-enlistment examination dated in July 1966 indicates a pre-existing hearing loss. However, an audiogram dated in April 1968 conducted as part of the enlistment examination shows hearing within normal limits, bilaterally. The March 1970 separation examination shows mild hearing loss, bilaterally. The examiner determined that the Veteran's hearing sensitivity at least as likely as not worsened while in military service, but the thresholds were still within normal limits at separation. The examiner concluded that in light of the conflicting results of the pre-induction and enlistment examinations, he was unable to form an opinion on whether or not the loss shown at separation pre-existed or was service-related. However, the examiner then provided the opinion that the Veteran's current hearing loss in the right ear is not the result of military noise exposure since the thresholds for the right ear at separation did not meet the criteria for impairment under VA regulations, there is no scientific evidence in support of delayed onset of noise-induced hearing loss and there is a positive history of civilian occupational noise exposure. The requirements for service connection for hearing loss as defined in 38 C.F.R. § 3.385 does not have to be shown by the results of audiometric testing during a claimant's period of active military service in order for service connection to be granted. The United States Court of Appeals for Veterans Claims (Court) has held the VA regulation does not necessarily preclude service connection for hearing loss that first met the regulation's requirements after service. Hensley v. Brown, 5 Vet. App. 155, 159 (1993). Based on the foregoing, the Board finds that the Veteran should be provided with another VA examination. As the examiner's opinion with respect to tinnitus may be affected by the determination of whether the Veteran's hearing loss is related to service, the Board finds that this issue should also be considered in the new VA examination.

With respect to the Veteran's increased rating claims for peripheral neuropathy of the bilateral upper extremities and right lower extremity, the Veteran was provided with a VA examination in February 2010. The VA examiner did not discuss how the Veteran's peripheral neuropathy affects the Veteran's occupation and/or daily life. He also did not provide an opinion on the severity of the Veteran's peripheral neuropathy. The Board notes that the VA examiner did not review the Veteran's claims file. The claims file contains the results of a private examination of the Veteran's neuropathy to include results of a motor nerve study conducted in November 2009. This information may have been relevant in the examiner's evaluation of the Veteran's neuropathy. Based on the foregoing, the Board finds that the Veteran should be provided with another VA examination to adequately evaluate the current severity of his service-connected peripheral neuropathy. 

Accordingly, the case is REMANDED for the following action:

1. Schedule the Veteran with a VA audiological examination and opinion with respect to right ear hearing loss and tinnitus claims. The claims file, including a copy of this REMAND, must be made available to the examiner, and the opinion should reflect that the claims file was reviewed in conjunction with the examination. The examiner should perform any medically indicated testing, including audiometric and speech recognition testing, and should note any reason for not reporting such test results. The examiner should document the nature, extent and severity of exposure to loud noise during and after service. After reviewing the record and examining the Veteran, the examiner should offer an opinion as to whether the Veteran's current right ear hearing loss and/or bilateral tinnitus is at least as likely as not (i.e., a fifty percent or greater probability) etiologically related to active military service to include the documented increase in hearing loss during service from the enlistment examination to the separation examination and/or any acoustic trauma. If the examiner determines that the Veteran's bilateral tinnitus is not etiologically related to active military service, then provide an opinion on whether the Veteran's tinnitus was caused by or aggravated by the Veteran's hearing loss. 

The Board notes that in determining whether the Veteran's bilateral hearing loss is related to service the examiner should be made aware that prior to November 1967, the service department reported audiometric test results under the American Standard Associates (ASA) scale. In July 1966, VA adopted the International Standard Organization (ISO) standard, which is the standard applied in 38 C.F.R. § 3.385. Thus, to compare the threshold hearing levels to later examinations, the examiner must convert any audiogram results prior to November 1967 from ASA units to the ISO units. 

A detailed explanation should be provided for all opinions and should reflect consideration of any lay statements provided by the Veteran. Specifically, the examiner should address the Veteran's statements that his hearing loss began in service and the VA treatment record in 1991 that shows complaints of tinnitus and indicates that the Veteran's mild hearing loss was related to the Veteran's service in Vietnam.

2. Schedule the Veteran for a VA neurological examination to ascertain the current nature and extent of peripheral neuropathy of the bilateral upper extremities and the right lower extremity, and of all nerves affected in those extremities, and the nature and degree of any functional impairment caused by such neuropathy. The claims file, including a copy of this REMAND, must be made available to the examiner, and the opinion should reflect that the claims file was reviewed in conjunction with the examination. The examiner should also discuss how any functional impairment affects his employment and daily life. All indicated special studies should be accomplished. The claims file, including a copy of this REMAND, must be made available to the examiner, and the opinion should reflect that the claims file was reviewed in conjunction with the examination. 

3. Upon completion of the foregoing, readjudicate the Veteran's claims of entitlement to service connection for bilateral hearing loss and tinnitus and entitlement to an initial increased rating for peripheral neuropathy of the bilateral upper extremities and right lower extremity based on a review of the entire evidentiary record. If the benefit sought on appeal remains denied, provide the Veteran and his representative with a supplemental statement of the case and the opportunity to respond thereto. Thereafter, subject to current appellate procedure, the case should be returned to the Board for further consideration, if in order.
The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2010).




______________________________________________
MILO H. HAWLEY
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs