Citation Nr: 1714104 
Decision Date: 04/28/17 Archive Date: 05/05/17

DOCKET NO. 10-14 211 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to service connection for a left knee disability.

2. Entitlement to service connection for the residuals of a traumatic brain injury (TBI).

3. Entitlement to service connection for erectile dysfunction.

4. Entitlement to a disability rating in excess of 50 percent for an acquired psychiatric disorder.

5. Entitlement to a total disability rating due to individual unemployability (TDIU).


REPRESENTATION

Veteran represented by: Douglass J. Rosinski, Attorney


ATTORNEY FOR THE BOARD

David R. Seaton, Associate Counsel


INTRODUCTION

The Veteran served on active duty from July 1986 to November 1986, from August 1990 to May 1991, and from March 2003 to July 2004.
 
This matter comes to the Board of Veterans' Appeals (Board) on appeal from an October 2007 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Atlanta, Georgia and a December 2008 rating decision from the RO in St. Petersburg, Florida.

The issues of entitlement to service connection for a left knee disability, entitlement to a disability rating in excess of 50 percent for an acquired psychiatric disorder, and entitlement to TDIU were previously before the Board and, in October 2012 and in November 2015, these matters were remanded for further development. Regarding the issue of entitlement to service connection for a left knee disability, further development in substantial compliance with the Board's remand instructions has been completed.

Service connection for the residuals of a TBI was originally denied in a December 2008 rating decision. The Veteran filed a timely notice of disagreement, and, in response, a statement of the case was issued in August 2011. The Veteran failed to timely perfect the appeal to the Board, because - although the Veteran filed a VA Form 9 - it was not filed within 60 days of the mailing date of the statement of the case or within one year of the mailing of the notification of the December 2008 rating decision. 38 C.F.R. § 20.302(b). Timely perfection of a substantive appeal is not jurisdictional in nature however, and the Board may exercise jurisdiction over issues raised in an untimely VA Form 9. Percy v. Shinseki, 23 Vet. App. 37 (2009). In light of the intertwined nature of the Veteran's previous claim for service connection for residuals of a TBI and the Veteran's previously granted service-connected disabilities including a disability currently on appeal before the Board; the Board hereby exercises jurisdiction over the entitlement to service connection for residuals of a TBI. 

Additionally, erectile dysfunction is a problem explicitly articulated in the schedular rating criteria for residuals of a TBI; see 38 C.F.R. § 4.124a, Diagnostic Code 8045; and, therefore, the Board shall exercise jurisdiction over that issue as well. 

The exercise of jurisdiction over the issue of entitlement to service for residuals of a TBI should not be considered and is not an exercise of jurisdiction over any other issue listed in the August 2011 statement of the case. The Board exercises its' discretion to decline jurisdiction over the remaining issues in the August 2011 statement of the case, because they are related to neurological and orthopedic disabilities related to a claimed injury of the lower spine rather than a head injury. The Board does not consider a claimed injury to the lower spine to be within the scope of a claimed head injury or TBI, and, unlike erectile dysfunction, the rating criteria for residuals of a TBI do not explicitly raise lower spine injuries; and, finally, the Veteran has not claimed complete loss of an extremity. 38 C.F.R. § 4.124a, Diagnostic Code 8045.
 
The issues of entitlement to service connection for residuals of a TBI and erectile dysfunction, entitlement to a disability rating in excess of 50 percent for an acquired psychiatric disorder, and entitlement to TDIU are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

The record contains lay evidence of continuous symptomatology since separation from service to the Veteran's diagnosis of a left knee disability.



CONCLUSION OF LAW

The criteria for service connection for a left knee disability have been met. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1131, 1137 (West 2014); 38 C.F.R. §§ 3.303, 3.309 (2016).


REASONS AND BASES FOR FINDING AND CONCLUSION

Duties to Notify and Assist 

Under applicable criteria, VA has certain notice and assistance obligations to claimants. See 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). As described infra, the Board is granting the Veteran service connection for the Veteran's claimed left knee injury; which is considered a grant of the his entire prayer of relief. Therefore, any failure on VA's part to notify or assist the Veteran is deemed harmless error.

Left Knee

The Veteran contends that he is entitled to service connection for a left knee disability. The weight of the evidence indicates that the Veteran is correct.

The Veteran's service treatment records indicate that he was in a motor vehicle accident in July 2003, and that he was subsequently treated at an emergency room for left knee pain. 

The Veteran separated from his most recent period of service in July 2004. Beginning with a July 2004 VA counseling record (indicating that the Veteran's ability to crawl was limited at that time), VA records from July 2004 to present indicate that the Veteran manifested left knee symptoms including pain and "giving out," and the Veteran required a knee brace. 

The Veteran has made multiple statements claiming that he had experienced pain since separation from his most recent period of service that still persists to this day. The Veteran submitted a statement from one of his acquaintances, dated June 2012, indicating that she had known the Veteran since November 2008, and that he had manifested symptoms in both knees since they met.

VA examinations in July 2015 and in September 2016 both indicated that the Veteran was diagnosed with arthritis of the left knee in 2013, and that the Veteran reported experiencing pain since separation of service. 

The weight of the evidence of record indicates that since separation from service the Veteran consistently reported in personal statements, VA records, and VA examinations that he manifesting left knee symptoms since separation of service. The Veteran's reports are corroborated by a VA record in July 2004 - the same month the Veteran separated from service - that his ability to crawl was limited. The Veteran's reports are further corroborated by a June 2012 statement from an acquaintance - who knew him since November 2008 - that he manifested left knee symptoms since she first met him. Finally, VA examiners in July 2015 and September 2016 indicated that the Veteran was diagnosed with degenerative arthritis in 2013. Therefore, the Veteran's has been diagnosed with arthritis of the left knee - a chronic disease subject to statutory presumptions - and has manifested continuous symptomatology since separation of service. 38 C.F.R. §§ 3.307, 3.309. Therefore, the evidence in this case is evenly balanced enough so as to allow application of the benefit-of-the-doubt rule as required by law and VA regulations. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. As such, entitlement to service connection for a left knee disability is granted. 
 

ORDER

Entitlement to service connection for a left knee disability is granted.



REMAND

TBI

The Veteran contends that he is entitled to service connection for the residuals of a TBI. An October 2003 in-service statement of medical examination and duty status indicates that the Veteran incurred a head and neck injury in-service when, in July 2003, the Veteran was a passenger in a van that was hit by a tractor trailer. As a result of this in-service head and neck injury the Veteran has been granted service connection for an orthopedic neck disability as well as radiculopathy of his upper left extremity. See September 2004 Rating Decision. Prudence suggests that VA's decision to grant service connection for disabilities linked to this particular in-service incurrence should give rise to claims to service connection for any other in-service disabilities linked to this particular in-service incurrence including potential residuals of TBI. This is sufficient to trigger VA's duty to assist, but the Veteran has not been granted a specific examination explicitly opining on whether that particular head injury constituted a TBI and whether any of the Veteran's current symptoms can be related to that TBI. McLendon v. Nicholson, 20 Vet. App. 79 (2006).

Nevertheless, the Veteran has been granted service connection for other disabilities that have overlapping symptomology with the residuals of a TBI including: migraines, an acquired psychiatric disorder, tinnitus, and vertigo. See September 2016 Rating Decision Code Sheet; see also 38 C.F.R. §§ 4.87, Diagnostic Codes 6204, 6260; 4.124a, Diagnostic Codes 8100, 8045; 4.130, Diagnostic Codes 9201-9440. Thus it is unclear from the record whether the Veteran is manifesting symptoms associated with the residuals of a TBI that the Veteran is not already being compensated for under other various diagnostic codes. 

Therefore in order to avoid the practice of pyramiding (i.e. the assignment of multiple disability ratings for a single disability); see 38 C.F.R. § 4.14, see also Esteban v. Brown, 6 Vet. App. 259 (1994) ; as well as to insure that an actual diagnosis (the cornerstone of VA disability ratings) of TBI residuals can be identified prior to the grant of service connection; see Degmetich v. Brown, 104 F.3d 1328 (1997); as well as to provide an examination when the facts in the record trigger VA's duty to assist; see McLendon; this matter must be remanded for an additional VA examination.

The Board also notes that in the untimely VA Form 9, filed in November 2011, the Veteran requested a hearing before the Board. As this matter is being remanded anyway, the Veteran and his representative should be contacted in order to seek clarification whether the Veteran still desires a personal hearing before the Board.

Erectile Dysfunction

The Veteran contends that he is entitled to service connection for erectile dysfunction. The Board finds that this issue is inexplicably intertwined with the Veteran's claims for service connection for the residuals of a TBI, because erectile dysfunction is explicitly raised as a problem associated with a TBI in the appropriate rating criteria. 38 C.F.R. § 4.124a, Diagnostic Code 8045. Therefore, this matter must be remanded as well. Harris v. Derwinski, 1 Vet. App. 180 (1991) (the adjudication of claims that are inextricably intertwined is based upon the recognition that claims related to each other should not be subject to piecemeal decision-making or appellate litigation).

Acquired Psychiatric Disorder

The Veteran contends that he is entitled to a disability rating in excess of 50 percent for an acquired psychiatric disorder. The rating criteria for acquired psychiatric disorders take into consideration symptoms such as memory and judgement; see 38 C.F.R. § 4.130, General Rating Formula for Mental Disorders; which are also anticipated in the cognitive impairment section of the rating criteria for the residuals of a TBI. 38 C.F.R. § 4.124a, Diagnostic Code 8045. Additionally, the rating criteria for residuals of a TBI specifically instruct that emotional and behavioral dysfunction caused by a TBI should be evaluated under the rating criteria for mental disorders. Id. Therefore, this issue is inexplicably intertwined with the entitlement to service connection for the residuals of a TBI, and it must be remanded as well. See Harris.
TDIU

The Veteran contends that he is entitled to TDIU. The rating criteria for TDIU require the Board to consider whether the Veteran is capable of securing and maintaining substantially gainful employment. 38 C.F.R. § 4.16. The rating criteria for mental disorders require the Board to consider the severity of the Veteran's occupational and social impairment. 38 C.F.R. § 4.130, General Rating Formula for Mental Disorders. Therefore, the Board finds that the issue of TDIU is inexplicably intertwined with the Veteran's claim for an increased disability rating for an acquired psychiatric disorder. See Harris.

Accordingly, the case is REMANDED for the following action:

1. Arrange to provide the Veteran with a VA examination or medical opinion from an appropriately qualified examiner or examiners to answer the following questions:

1a. Is it at least as likely as not (50 percent or more) that the Veteran manifested hemorrhage, brain thrombosis, epilepsies, organic disease of the nervous system, or psychoses within one year of separation from service? Why or why not? If so, please list which diagnoses began to manifest within one year of separation of service.

1b. Is it at least as likely as not (50 percent or more) that the Veteran manifested continuous symptomatology since separation of service for any of the following conditions: hemorrhage, brain thrombosis, epilepsies, organic disease of the nervous system, or psychoses? Why or why not? If so, please list which diagnoses for which the Veteran has manifested continuous symptomatology since separation from service.
1c. Did the Veteran incur a moderate or severe TBI in-service; why or why not; and, if so, did the Veteran manifest any of the following diagnoses: Parkinsonism; unprovoked seizures; dementias (if so which type); depression; or diseases of hormone deficiency; why or why not; and, if so, when did they begin to manifest? Why?

1d. Is it at least as likely as not (50 percent or more) that the Veteran manifested symptoms or diagnoses associated with a TBI? Why or why not? If so, please list all of them.

1e. Is it at least as likely as not (50 percent or more) that a medical nexus exists between any of the symptoms or diagnoses listed in question 1d. and an in-service incurrence including a head injury in a July 2003 motor vehicle accident? Why or why not?

1f. Is it at least as likely as not (50 percent or more) that the Veteran has a diagnosis of erectile dysfunction and, if so, when did it first begin to manifest? Why or why not?

1g. Is it at least as likely as not (50 percent or more) that a medical nexus exists between the Veteran's claimed erectile dysfunction and an in-service incurrence? Why or why not?

1h. Is it at least as likely as not (50 percent or more) that the Veteran manifested continuous symptomatology of erectile dysfunction since separation of service? Why or why not?

1i. Is it at least as likely as not (50 percent or more) that the Veteran's erectile dysfunction is proximately due to or aggravated by an in-service incurrence including an in-service TBI? Why or why not?

1j. Is the Veteran manifesting psychological symptoms associated with a TBI; why or why not; and, if so, can they be distinguished from any of the Veteran's symptoms associated with the Veteran's previously service-connected acquired psychiatric disorder? Why or why not?

1k. Comment on the Veteran's ability to function in occupational and social environments in light of the fact that the Veteran has secured employment as a VA peer specialist? Why?

1l. Describe the Veteran's functional impairment due solely to his previously service-connected disabilities in light of the fact that the Veteran has secured employment as a VA peer specialist? Why?

1m. In answering questions 1k and 1l, indicate the significance if any of the fact that the VA career website indicates that in order to be a peer specialist the Veteran must to be able to live in the community of his choice, independently and have a meaningful life that he is satisfied with and that any currently manifesting psychological symptoms must no longer interfere with major functioning in most life activities in a significant way (available at https://www.va careers.va .gov/peer-to-peer/faqs.asp). Why?

2. Then, readjudicate the claims on appeal. If the benefits sought are not granted, provide the Veteran and his representative with a supplemental statement of the case and allow an appropriate opportunity to respond thereto.

3. Finally, before returning the case to the Board, if in order, contact the Veteran and his representative and request clarification on whether the Veteran still desires a personal hearing before the Board in order to present evidence related to his claim for entitlement to service connection for residuals of a TBI or any other claim currently pending before the Board. If so, schedule the Veteran for the appropriately desired hearing before returning the case to the Board. Otherwise, simply return the case to the Board.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
KELLI A. KORDICH
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs