﻿Citation Nr: AXXXXXXXX
Decision Date: 02/13/19 Archive Date: 02/13/19

DOCKET NO. 181010-658
DATE: February 13, 2019

ORDER

Service connection for muscle spasms of the left eye is denied.

Service connection for right thumb condition is denied.

REMANDED

Entitlement to service connection for left ankle condition is remanded.

FINDINGS OF FACT

1. The preponderance of the evidence of record is against finding that the Veteran has had a disability of which muscle spasms of the left upper eyelid was a symptom at any time during or approximate to the pendency of the claim.

2. The preponderance of the evidence is against finding that the Veteran’s right thumb condition began during active service, or is otherwise related to an in-service injury or disease.

CONCLUSIONS OF LAW

1. The criteria for service connection for muscle spasms of the left eye have not been met. 38 U.S.C. §§ 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

2. The criteria for service connection for right thumb condition have not been met. 38 U.S.C. §§ 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program, RAMP, the Rapid Appeals Modernization Program.

The Veteran served on active duty from October 1978 to October 1981 and from November 1983 to December 1984, with additional National Guard service.

The Veteran selected the Higher-Level Review lane when he submitted the RAMP election form. Accordingly, the September 2018 RAMP rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed this RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

SERVICE CONNECTION

In general, service connection may be granted for a disability or injury incurred in or aggravated by active military service. 38 U.S.C. § 1131; 38 C.F.R. § 3.303. To prevail on a direct service connection claim, there must be competent evidence of (1) a current disability, (2) an in-service incurrence or aggravation of a disease or injury, and (3) a nexus between the in-service disease or injury and the current disability. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009); 38 U.S.C. § 1131; 38 C.F.R. § 3.303(a).

The claimant bears the burden of presenting and supporting a claim for benefits. 38 U.S.C. § 5107(a); Fagan v. Shinseki, 573 F.3d 1282, 1286–88 (Fed. Cir. 2009). In making determinations, VA is responsible for ascertaining whether the evidence supports the claim or is in relative equipoise, with the veteran prevailing in either event, or whether the preponderance of the evidence is against the claim, in which case the claim is denied. See 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 54 (1990).

Here, the Board reviewed all evidence in the claims file, with an emphasis on that which is relevant to this appeal. Although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss, in detail, every piece of evidence of record. Gonzales v. West, 218 F.3d 1378, 1380–81 (Fed. Cir. 2000) (holding that the Board must review the entire record but does not have to discuss each piece of evidence). Therefore, the Board will summarize the relevant evidence where appropriate, and the Board’s analysis will focus specifically on what the evidence shows, or fails to show, as it relates to the Veteran’s claims.

From the outset, the Board notes that the Veteran, while entirely competent to report his symptoms, is not competent to proffer an opinion as to diagnoses or the etiologies of his disabilities. Such opinions require specific medical training and are beyond the competency of a lay person. In the absence of evidence indicating that the Veteran has the medical training to render medical opinions, the Board must find that his contentions in these regards to be of no probative value. See 38 C.F.R. § 3.159(a)(1)–(2) (defining competent medical evidence and competent lay evidence); Charles v. Principi, 16 Vet. App. 370 (2002) (finding the veteran competent to testify to symptomatology capable of lay observation); Layno v. Brown, 6 Vet. App. 465, 469–70 (1994) (noting that competent lay evidence requires facts perceived through the use of the five senses); Barr v. Nicholson, 21 Vet. App. 303, 307 (2007) (stating that “lay persons are not competent to opine on medical etiology or render medical opinions.”). Accordingly, the statements offered by the Veteran in support of his claims are not competent evidence to support any specific diagnosis or etiology of a disability.

1. Service connection for muscle spasms of the left eye.

The Veteran contends that shortly after a left eye injury while in service, which resulted in a retinal scar, he developed intermittent episodes of left eye lid twitching that has become more frequent, and he seeks service connection. The AOJ found that the Veteran’s service treatment records showed an injury to the left eye by a pellet gun in June 1979. As discussed below, the Veteran is service-connected for a left eye retinal scar and for headaches. The Board notes that he is also service-connected for posttraumatic stress disorder (PTSD).

The questions for the Board are whether the Veteran has a current disability that began during service or is at least as likely as not related to an in-service injury, event, or disease; and whether he has a current disability that is proximately due to or the result of, or aggravated beyond its natural progression by a service-connected disability.

The Board concludes that the Veteran does not have a current disability, in that the muscle spasms of his left eyelid have not been medically diagnosed as a symptom of a free-standing disability or identified as a symptom of one of his service-connected disabilities, and has not had one at any time during the pendency of the claim or recent to the filing of the claim. 38 U.S.C. §§ 1131, 5107(b); 38 C.F.R. § 3.303(a), (d); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); Romanowsky v. Shinseki, 26 Vet. App. 289, 294 (2013); McClain v. Nicholson, 21 Vet. App. 319, 321 (2007).

In March 2015, the Veteran was afforded a VA examination for cranial nerve conditions, during which the examiner found that the Veteran had never been diagnosed with a cranial nerve condition. The examiner noted that a medical records review did not reveal a diagnosis of a left upper eye lid twitch disorder or any other cranial nerve disorder. It was recorded that the Veteran reported that he had not complained to any healthcare providers about this condition.

The Veteran reported that his left upper eye lid intermittently twitched rapidly like a strobe light, which occurred ten to twenty times per month. It was not constant, and it came and went. He reported that it was not painful and did not interfere with work. The examiner did not find anything remarkable during the examination of the cranial nerves.

The Veteran was afforded VA examinations for eye conditions in July 2014 and February 2017. The reports of these examinations reveal that the external examinations of the eyelids were normal bilaterally. The examiner did not note during either examination that the Veteran reported that his left eyelid twitched.

Separately, the Veteran sought service connection for headaches in association with his service-connected left eye retinal scar. In July 2016, the Veteran presented a private disability benefits questionnaire (DBQ) for headaches. The clinician indicated that the Veteran suffered from tension headaches, which he reported were sharp and focused at the left eye at mid-brow. The Veteran reported that they began after his in-service left eye injury. It was recorded that the location of the pain was typically the left side of the head. Twitching of the left eye lid was not included as a symptom related to the Veteran’s service-connected headaches.

As stated above, the Veteran is competent to report his symptoms and their onset, such as a twitching eyelid, as he has personal knowledge of these matters. See 38 C.F.R. § 3.159(a)(1)–(2) (defining competent medical evidence and competent lay evidence); Charles v. Principi, 16 Vet. App. 370 (2002) (finding the veteran competent to testify to symptomatology capable of lay observation). But he is not qualified to diagnose the condition, if any, of which his twitching eyelid is a symptom. See Barr v. Nicholson, 21 Vet. App. 303, 307 (2007) (stating that “lay persons are not competent to opine on medical etiology or render medical opinions”). The Board finds that the evidence of record lacks probative medical evidence to establish that the muscle spasms of the Veteran’s left eyelid are a symptom of a diagnosable disability, either as a free-standing disability or as a symptom of an already service-connected disability. The Veteran does not contend otherwise.

The existence of a current disability is the cornerstone of a claim for VA disability compensation. See Degmetich v. Brown, 104 F.3d 1328 (1996) (holding that section 1110 of the statute requires the existence of a present disability for VA compensation purposes); see also Gilpin v. West, 155 F.3d 1353 (Fed. Cir. 1998); Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992); Rabideau v. Derwinski, 2 Vet. App. 141, 144 (1992); Romanowsky v. Shinseki, 26 Vet. App. 289 (2013). To the extent that the Veteran complains of muscle spasms of the left upper eyelid, VA does not generally grant service connection for symptoms alone, without an identified basis for those symptoms. VA needs to identify a disability, not symptoms of a disability, or treatment. Accordingly, the first Holton element is not met, and the claim fails.

Based upon the foregoing, as the preponderance of the evidence is against the claim, the benefit of the doubt rule does not apply, and the claim must be denied. See 38 U.S.C. §§ 501, 5107(b); 38 C.F.R. §§ 3.102, 4.3, 4.7; see also Gilbert v. Derwinski, 1 Vet. App. 49, 54 (1990).

2. Service connection for right thumb condition.

The Veteran essentially contends that the current pain, locking, and snapping of his right thumb is related to an in-service injury, and he seeks service connection. 

The AOJ found that the Veteran’s service treatment records show that he sustained a puncture wound to the right thumb in September 1984. Hence, the second Holton element, in-service incurrence of an injury, event, or disease, is met.

The question for the Board, therefore, is whether the Veteran has a current disability that is at least as likely as not related to his in-service right thumb injury. The Board concludes that, while the Veteran has abnormal range of motion of the right thumb, and it is established that he had an in-service puncture wound of the right thumb, the preponderance of the evidence weighs against finding that the Veteran’s right thumb condition began during service or is otherwise related to an in-service injury, event, or disease. 38 U.S.C. §§ 1131, 5107(b); 38 C.F.R. § 3.303(a), (d); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009).

In October 2015, the Veteran was afforded a VA examination for hand and finger conditions. The examiner noted a September 1984 diagnosis of puncture wound with foreign body of the right thumb. The Veteran reported that his right thumb gets pain in it and that it locks up and snaps during the majority of the day. It was noted that the Veteran is right-handed. It was recorded that there was a 4.0 cm gap between the pad of the thumb and the fingers, and there was no pain noted on examination. It was indicated that the range of motion was abnormal. The examiner remarked that there was stiffness in both thumbs during range of motion testing. It was indicated that imaging studies had not been performed. As the Veteran’s right thumb examination was abnormal, the Board finds that the first Holton element, current disability, is met.

As to a nexus, the October 2015 VA examiner opined that it was less likely than not that the Veteran’s right thumb condition was incurred in or caused by the in-service injury. It was explained that the Veteran’s service treatment records showed the removal of a wood splinter from the right thumb in September 1984, and there was pain over the PIP joint. It was noted that X-rays were negative, and the wound healed well. The examiner noted that the Veteran’s August 1991 separation examination was silent for a right thumb condition. It was noted, furthermore, the Veteran’s post-service medical records were also silent for a right thumb condition.

The examiner’s opinion is probative because it is based on an accurate medical history and provides an explanation that contains clear conclusions and supporting data. Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). Thus, the examination report weighs against finding a relationship between the Veteran’s right thumb disability and service.

As noted above, the Veteran is competent to report his symptoms but he is not competent to make a diagnosis or to render an opinion on etiology. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). In reliance upon the probative medical evidence, the Board finds that the preponderance of the evidence is against finding that the Veteran’s current right thumb condition is related to his in-service injury. Accordingly, the third Holton element, medical nexus, is not met, and the claim fails.

Based upon the foregoing, as the preponderance of the evidence is against the claim, the benefit of the doubt rule does not apply, and the claim must be denied. See 38 U.S.C. §§ 501, 5107(b); 38 C.F.R. §§ 3.102, 4.3, 4.7; see also Gilbert v. Derwinski, 1 Vet. App. 49, 54 (1990).

REASONS FOR REMAND

Entitlement to service connection for left ankle condition is remanded.

The Veteran contends that his left ankle pops and aches, and he seeks service connection.

In July 2016, the Veteran presented a private DBQ for ankle conditions, the report of which provided no diagnosis in the designated section. In the September 2018 higher level review rating decision on appeal, the AOJ denied entitlement to service connection for a left ankle disability citing the lack of a diagnosis in the private DBQ.

In the July 2016 private DBQ, however, it was recorded that the Veteran reported injuring his left ankle in the early 1990s when he was running to a supply chain and sustained a torsion injury of the ankle when he stepped into a tank rut. He reported that the ankle swelled up immediately and started bruising. He reported that pain and swelling had been chronic ever since. He reported that he could not golf, rotate, or walk on the ankle without it swelling up.

The examiner indicated that the range of motion for the left ankle was abnormal and that it contributed to functional loss. It was recorded that there was ankylosis in plantar flexion of 5 degrees and in dorsiflexion of 40 degrees with inversion deformity, eversion deformity, and in good weight-bearing position. It was indicated that there was X-ray evidence of degenerative or traumatic arthritis and that there was objective evidence of crepitus. It was also recorded that the Veteran’s right leg has a below the knee amputation.

The Veteran’s VA medical records show that in February 2016 he was seen by general medicine for left ankle pain. He reported that when retrieving air drops in the military he walked into a tank rut resulting in a severe left ankle sprain; he reported not seeking treatment. It was noted that ankle X-rays were negative. It was noted: “It is certainly a possibility that some of these conditions are related to his reported injuries during his military service,” referring to back, left knee, and left ankle conditions.

VA medical records from January 2017 show that the Veteran had left ankle pain with a history of inversion ankle sprain and tendinitis left peroneal. The Veteran’s VA medical records show that in January 2018, the primary care clinic noted that he was followed in podiatry for, among other things, left ankle instability. It was noted that left ankle X-rays were unremarkable but, because of a pellet lodged in his orbit, MRI was precluded. Podiatry records show that the Veteran was followed for left ankle instability, which had been treated with injections. The Boards finds that the medical evidence establishes that the Veteran has a current disability.

For compensation purposes, in pertinent part, duty periods include “any period of inactive duty training during which the individual concerned was disabled or died from an injury incurred or aggravated in line of duty. 38 C.F.R. § 3.6(a). The Veteran’s military personnel records show that in November 1994 he received a letter of commendation for his performance while assigned squad leader during the National Guard’s Annual Training 94 at Camp Ripley Minnesota. The records show that the Veteran had 48 days of inactive duty training in 1994.

In September 2015, the Veteran presented a statement from R.C.H., who stated that they were on a 21-day opposing force assignment, during which the Veteran was on a mission to recovery a night resupply by airdrop, and he stepped into a hole or a tank track. R.C.H. stated that he was not with the Veteran when it happened but that later when they spoke the Veteran wanted to stay in the field and finish the mission. In a February 2016 statement, R.C.H. stated that while they were at Camp Ripley Minnesota they were being resupplied by a night airdrop during which the Veteran stepped into a tank rut or hole when he ran out to recover the drop. R.C.H. stated that the medic checked the Veteran and it was decided that he would try to walk it out and continue the mission.

In a February 2016 statement, A.T. stated that he witnessed the Veteran hurt his left ankle when he twisted it when retrieving air drop supplies.

The Board finds that the evidence establishes that the Veteran suffered a left ankle injury while on inactive duty training in 1994 while at Camp Ripley Minnesota. The Veteran has not been afforded a VA examination as required. 38 C.F.R. § 3.159(c)(4), (d); McLendon v. Nicholson, 20 Vet. App. 79, 81 (2006).

The issue of entitlement to service connection for left ankle condition is remanded to correct a duty to assist error that occurred prior to the September 2018 rating decision on appeal. The Agency of Original Jurisdiction (AOJ) did not obtain a VA examination prior to the September 2018 rating decision on appeal. However, based on the evidence associated with the claims file prior to the September 2018 rating decision, the Board finds that a VA examination/medical opinion is required to determine whether the Veteran’s left ankle condition is related to service.

The matters are REMANDED for the following action:

Schedule the Veteran for an appropriate examination to determine the nature and etiology of the Veteran’s left ankle condition. Any and all studies, tests, and evaluations deemed necessary by the examiner should be performed. The examiner is requested to review all pertinent records associated with the claims file, including this Remand in its entirety, and to indicate review of the file in the examination report.

The examiner must obtain a full history from the Veteran. It should be noted that the Veteran is competent to attest to factual matters of which he has first-hand knowledge, such as observable symptomatology. If there is a medical basis to support or doubt the history provided by the Veteran, the examiner should provide a fully reasoned explanation.

Please indicate whether the Veteran’s left ankle condition is at least as likely as not (50 percent or greater probability) due to or aggravated by the Veteran’s in-service injury to the left ankle.

The examiner should not resort to mere speculation, but rather should consider that the phrase “at least as likely as not” does not mean within the realm of medical possibility, but rather that the medical evidence both for and against a conclusion is so evenly divided that it is as medically sound to find in favor of a certain conclusion as it is to find against it.

The examiner must reconcile any opinion with the evidence of record, citing to the record as appropriate. A clear rationale for all opinions would be helpful and a discussion of the facts and medical principles involved would be of considerable assistance to the decision maker. The examiner must address any conflicting medical evidence of record.

If the examiner is unable to offer the requested opinion, it is essential that the examiner offer a rationale for the conclusion that an opinion could not be provided without resort to speculation, together with a statement as to whether there is additional evidence that could enable an opinion to be provided, or whether the inability to provide the opinion is based on the limits of medical knowledge.

 

L. CHU

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD Leanne M. Innet, Associate Attorney